Tim Cunningham, OSB #100906
timcunningham@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 SW Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

Frederick B. Burnside, OSB #096617
fredburnside@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone:  (206) 622-3150
Facsimile:  (206) 757-7700

Attorneys for Defendant OnPoint Community Credit Union

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TIMOTHY SOUTH, individually and on behalf of all other similarly situated**,** | Case No. 3:21-cv-00567-HZ |
| Plaintiff, | **DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| ONPOINT COMMUNITY CREDIT UNION**,** | |
| Defendant. | |

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.    STATEMENT OF FACTS ............................................................................................ 2

      A.     OnPoint's History and Background. ..................................................................... 2

      B.     The Account Agreement. ....................................................................................... 3

      C.     The ACH Process and NACHA Rules. .................................................................. 5

      D.     NSF and Overdraft Fees Serve Important Purposes. ............................................. 6

      E.     Plaintiff and His Fees. ........................................................................................... 7

      F.     Plaintiff's Claims and the Putative Class. ............................................................. 7

III.   ARGUMENT ............................................................................................................... 8

      A.     Federal Law Controls and Also Preempts Plaintiff's Claims. ............................... 8

            1.     The Federal Truth In Savings Act Preempts Plaintiff's Claims. ................. 9

            2.     The EFTA Controls and Preempts Plaintiff's Claims. ............................. 12

      B.     Plaintiff Fails to State a Claim for Breach of Contract. ....................................... 14

            1.     Plaintiff's Failure to Provide Pre-Suit Notice Bars His Claims. ............... 14

            2.     Plaintiff's Contract Claims Fail on the Merits. ........................................ 15

      C.     OnPoint Did Not Breach the Duty of Good Faith and Fair Dealing..................... 23

      D.     Plaintiff's UTPA Claims Fail for Myriad Reasons. ............................................. 24

            1.     Plaintiff's ATM-Fee Claims are Time Barred .......................................... 25

            2.     Plaintiff's Vague UTPA Claims Do Not Satisfy *Twombly*. ...................... 25

            3.     Plaintiff Fails to Allege Conduct Covered By the UTPA. ......................... 25

            4.     Plaintiff Does Not Allege an Actionable Misrepresentation..................... 27

            5.     Plaintiff Cannot Establish Causation. ...................................................... 28

            6.     Plaintiff Does Not Allege Facts Showing Willfulness. ............................. 28

            7.     The UTPA's Safe Harbor Protects OnPoint.............................................. 29

IV.    CONCLUSION............................................................................................................ 30

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Altria Grp., Inc. v. Good*,
555 U.S. 70, 76 (2008)), *aff'd* 780 Fed. App'x. 171 (5th Cir 2019) .........................................8

*Andrichyn v. TD Bank, N.A.*,
93 F. Supp. 3d 375 (E.D. Pa. 2015) ......................................................................................5

*Arnett v. Bank of Am., N.A.*,
874 F. Supp. 2d 1021 (D. Or. 2012) ...................................................................................24

*ATM Antitrust Litig., In Re*,
686 F.3d 741 (9th Cir. 2012) ......................................................................................16, 23

*Azose v. Wash. Mut. Bank*,
558 F. Supp. 2d 366 (S.D.N.Y. 2008) ............................................................................13, 30

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................................8, 25

*Checking Acct. Overdraft Litig., In Re*,
694 F. Supp. 2d 1302 (S.D. Fla. 2010) ................................................................................26

*Chen v. Bank of Am.*,
2019 WL 9633650 (C.D. Cal. 2019) .....................................................................................12

*Cinar v. Bank of America, N.A.*,
2014 WL 3704280 (D. Md. 2014) .........................................................................................11

*Colquitt v. Mfrs. & Traders Trust Co.*,
144 F. Supp. 3d 1219 (D. Or. 2015) ..............................................................................26, 28

*Costoso v. Bank of Am., N.A.*,
74 F. Supp. 3d 558 (E.D.N.Y. 2015) ..................................................................................5, 6

*Crockrom v. Bank of Am., N.A.*,
2020 WL 6747034 (S.D.N.Y. 2020) ......................................................................................15

*Diane Sales, Inc. v. Am. Express Centurion Bank*,
2014 WL 11429026 (D. Md. 2014) ......................................................................................20

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
    458 U.S. 141 (1982) .......................................................................................................9

*Fleshman v. Wells Fargo Bank, N.A.*,
    27 F. Supp. 3d 1127 (D. Or. 2014) ...............................................................................28

*Giotta v. Ocwen Loan Servicing*,
    706 Fed. Appx. 421 (9th Cir. 2017) ..............................................................................14

*Glob. Exec. Mgmt. Sols., Inc. v. Int'l Bus. Machines Corp.*,
    260 F. Supp. 3d 1345 (D. Or. 2017) .............................................................................24

*Gutierrez v. Wells Fargo & Co.*,
    622 F. Supp. 2d 946 (N.D. Cal. 2009) ..........................................................................26

*Gutierrez v. Wells Fargo Bank, N.A.*,
    704 F.3d 712 (9th Cir. 2012) ..........................................................................................9

*Hamilton v. General Mills, Inc.*,
    2016 WL 6542840 (D. Or. 2016) ..................................................................................29

*Harney v. Associated Materials, Inc.*,
    2018 U.S. Dist. LEXIS 8124 (D. Or. 2018) .................................................................28

*In re Checking Acct. Overdraft Litig.*,
    694 F. Supp. 2d 1302 (S.D. Fla. 2010) .........................................................................26

*Knous v. United States*,
    683 Fed. Appx. 859 (11th Cir. 2017) ............................................................................22

*Lambert v. Navy Federal Credit Union*,
    2019 WL 3843064 (E.D. Va. 2019) .......................................................................10, 18

*Lloyd v. Navy Fed. Credit Union*,
    2018 WL 1757609 (S.D. Cal. 2018) .............................................................................26

*Lossia v. Flagstar Bancorp, Inc.*,
    895 F.3d 423 (6th Cir. 2018) ..........................................................................................5

*Marshall v. Wells Capital Mgmt., Inc.*,
    2007 WL 4565164 (D. Or. 2007) ..................................................................................23

*McKie v. Sears Prot. Co.*,
    2011 WL 1587112 (D. Or. 2011) ..................................................................................29

*Mendoza v. Lithia Motors, Inc.*,
    2017 WL 125018 (D. Or. 2017) ....................................................................................27

Page iii - DEFENDANT'S MOTION TO DISMISS

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Overby v. Chase Manhattan Bank*,
    351 F. Supp. 2d 219 (S.D.N.Y. 2005)........................................................................14

*Page v. Alliant Credit Union*,
    2020 WL 5076690 (N.D. Ill. 2020) ............................................................11, 18, 19

*Ri Ky Roofing & Sheet Metal, LLC v. DTL Builders, Inc.*,
    2018 WL 1528790 (D. Or. 2018)...............................................................................24

*Rose v. Chase Bank USA, N.A.*,
    513 F.3d 1032 (9th Cir. 2008) ....................................................................................9

*Schertzer v. Bank of Am.*,
    445 F. Supp. 3d 1058 (S.D. Cal. 2020)........................................................13, 16, 30

*Steckman v. Hart Brewing, Inc.*,
    143 F3d 1293 (9th Cir. 1998) .....................................................................................8

*Thompson ex rel. Thorp Family Charitable Remainder Unitrust v. Federico*,
    324 F. Supp. 2d 1152 (D. Or. 2004) .........................................................................27

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ......................................................................................8

*Vathana v. EverBank*,
    770 F.3d 1272 (9th Cir. 2014) ..................................................................................10

*Volden v. Innovative Fin. Sys., Inc.*,
    440 F.3d 947 (8th Cir. 2006) ....................................................................................20

*Whittington v. Mobiloil Fed. Credit Union*,
    2017 WL 6988193 (E.D. Tex. 2017) .............................................................8, 9, 10

**State Cases**

*Choy v. Space Coast Credit Union*,
    2020 WL 3039243 (Fla. Cir. Ct. 2020)......................................................................19

*Cullen v. Inv. Strategies*,
    139 Or. App. 119, 911 P.2d 936 (1996).....................................................................26

*Denson v. Ron Tonkin Gran Turismo, Inc.*,
    279 Or. 85, 566 P.2d 1177 (1977) ............................................................................28

*Fenton v. Tri-County Bank & Trust Co.*,
    2020 WL 8673276 (Putnam Cnty. Super. Ct. Dec. 29, 2020) *vacated by*
    *settlement* (March 2, 2021) .........................................................................16, 17, 18

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4851-2560-5603v.12 0117323-000002

*Fleming v. Kids and Kin Head Start*,
  71 Or. App. 718, 693 P.2d 1363 (1985)...................................................................15

*Foltz v. Matanuska Valley Federal Credit Union*,
  2021 WL 865542 (Alaska Super. 2021) ...................................................11, 19, 20

*Geiger v. Crestar Bank*,
  778 A.2d 1085 (D.C. Ct. App. 2001).........................................................................5

*Haines v. Wash. Trust Bank*,
  2020 WL 6861458 (Wash. Sup. Ct. Nov. 9, 2020)............................................18, 19

*Lamm v. Amfac Mortg. Corp.*,
  44 Or. App. 203, 605 P.2d 730 (1980)....................................................................25

*Luedeman v. Tri-West Const. Co.*,
  39 Or. App 401, 592 P.2d 281 (1979)......................................................................24

*Pac. First Bank v. New Morgan Park Corp.*,
  319 Or. 342, 876 P.2d 761 (1994) ......................................................2, 12, 20, 23

*Pearson v. Philip Morris, Inc.*,
  358 Or. 88, 361 P.3d 3 (2015) ................................................................................25

*Roach v. Mead*,
  76 Or. App. 83, 709 P.2d 246 (1985).......................................................................26

*Sajo v. Roberts*,
  304 Or. 414, 747 P.2d 214 (1987) ..........................................................................22

*Sanders v. Francis*,
  277 Or. 593, 561 P.2d 1003 (1977) ........................................................................28

*Saunders v. Y-12 Federal Credit Union*,
  2020 WL 6499558 (Tenn. Ct. App. Nov. 5, 2020)..................................................19

*Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*,
  320 Or. 638, 891 P.2d 639 (1995) ..........................................................................23

*Winamaki v. Umpqua Bank*,
  2020 WL 6861466 (Or. Cir. 2020) ..........................................................................17

*Zygar v. Johnson*,
  169 Or. App. 638, 10 P.3d 326 (2000)....................................................................23

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

**Federal Statutes**

12 U.S.C. § 4301 ..................................................................................2, 5, 9

12 U.S.C. § 4310 ......................................................................................10

15 U.S.C. § 1693 ...............................................................................2, 4, 12

**State Statutes**

ORS 42.230 ..............................................................................................17

ORS 646.605 ............................................................................................29

ORS 646.608 .........................................................................24, 25, 26, 27

ORS 646.612 ............................................................................................29

ORS 646.638 .....................................................................24, 25, 27, 28, 29

ORS 725A.060 .........................................................................................10

**Rules**

Fed. R. Civ. P. 8 .......................................................................................25

Fed. R. Civ. P. 12 ...................................................................................1, 8

**Regulations and Regulatory Materials**

12 C.F.R. § 7.4002 .....................................................................................6

12 C.F.R. § 707.1 ..............................................................................9, 10, 30

12 C.F.R. § 707.4 ................................................................................10, 29

12 C.F.R. § 707.9 ......................................................................................10

48 Fed. Reg. 54319-01, 1983 WL 110730 (1983) ......................................6

Data Point:  Checking Account Overdraft (CFPB 2014), at 6 n.4, *available at*
    https://files.consumerfinance.gov/f/201407_cfpb_report_data-
    point_overdrafts.pdf .........................................................................21

OCC, Help Topics, Bank Accounts, Non-Sufficient Funds Fees & Overdraft
    Protection, *available at* https://www.helpwithmybank.gov/help-topics/bank-
    accounts/nsf-fees-overdraft-protection/overdraft-protection-
    programs/overdraft-resubmitted.html ...............................................21

Or. Div. Fin. Reg. http://www.cbs.state.or.us/dir/careerfair/docs/broch/dfr.pdf ...........................6

4851-2560-5603v.12 0117323-000002
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

**Other Authorities**

Chase Total Checking, A Guide to Your Account, available at,
     https://www.chase.com/content/dam/chasecom/en/checking/documents/clear_
     simple_guide_total.pdf...........................................................................................................7

Moebs Servs., Who uses Overdrafts (June 2009) (emphasis added), *available at*:
     http://www.moebs.com/press-releases/ctl/details/mid/380/itemid/194....................................7

National Automated Clearing House Association (NACHA) Rule 8.7, Entry ...........................20

NCUA Opinion Letter 04-0147, Nat'l Credit Union Admin. at 3 (Feb. 10, 2004),
     https://www.ncua.gov/files/legal-opinions/OL2004-0147.pdf .................................................2

OnPoint Community Credit Union, How to Avoid Paying ATM Fees, available at
     https://www.onpointcu.com/blog/how-to-avoid-paying-atm-fees/.........................................16

4851-2560-5603v.12 0117323-000002
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

**L.R. 7-1(A) CERTIFICATION**

Counsel for OnPoint Community Credit Union conferred with Plaintiff's counsel on April 23, 2021. The parties were unable to resolve the issues presented in this motion.

**MOTION**

Defendant OnPoint moves the Court for an order dismissing Plaintiff's First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff is suing OnPoint regarding overdraft fees and ATM fees. His FAC seeks to foist onto OnPoint the processing costs and third-party ATM fees caused by his failure to bring his accounts current and his decision to make balance inquiries at non-network ATMs. The parties' Membership and Account Agreement ("Account Agreement") refute these theories.

As to overdraft fees, Plaintiff claims OnPoint may charge a "single" fee for each purchase made, no matter how many times a merchant requests payment, and regardless whether OnPoint returns or pays the request. But the Account Agreement explains that "[i]f *on any day* the available funds in [his] checking account [was] not sufficient to cover checks and other items posted to [his] account," he was "*subject to a charge for each item* whether paid *or returned unpaid*." FAC Ex. B at 16 (emphasis added). OnPoint determines if insufficient funds exist "at the time the check or item *is presented*" to OnPoint. *Id.* (emphasis added). The triggering event for an overdraft fee is the merchant's payment request presented against insufficient funds on a given day. What matters is not whether Plaintiff made a "single" request to his merchant, but how many times the merchant sought payment against an account with insufficient funds.

As to ATM fees, Plaintiff claims that if he completes two transactions at a non-network ATM, he should only pay one fee because it was only one ATM visit. But that is not what the Account Agreement provides (and it ignores that OnPoint pays a fee to the ATM network and a fee to the ATM operator for *every* transaction). The Account Agreement lists four ways a member may use an ATM—deposits, withdrawals, line-of-credit access, and balance inquiries—and states that if Plaintiffs use a non-network ATM, an "ATM surcharge will be debited" for

Page 1 – DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

every completed transaction.  FAC Ex. B. at 28, 54.  Plaintiff admits completing **both** a balance inquiry **and** a cash withdrawal while using a non-network ATM and thus should have expected a fee for both those completed transactions because that is what the Account Agreement provides.

Plaintiff brings contract-based claims and claims for alleged Unfair Trade Practices Act ("UTPA") violations.  The Court should dismiss Plaintiff's Complaint with prejudice because:

***First***, the Truth in Savings Act (12 U.S.C. § 4301 *et seq*.) ("TISA") and Electronic Funds Transfer Act (15 U.S.C. § 1693 *et seq*.) ("EFTA") both dictate and preempt Plaintiff's claims.

***Second***, Plaintiff's contract-based claims fail because:  (a) he failed to contact OnPoint to challenge the fees before filing suit, as the contract and federal law require; (b) the challenged overdraft fee stems from a separate request, presented on a separate day, against insufficient funds, such that the overdraft fee was proper; (c) Plaintiff used non-network ATMs to complete two transactions, so OnPoint charged two fees, as promised; and (d) OnPoint's exercise of contractual rights cannot breach the duty of good faith and fair dealing.

***Third***, Plaintiff's UTPA claims fails because (a) the ATM-fee claims are time barred; (b) the claims are conclusory; (c) the UTPA does not apply to ATM or overdraft fees; (d) he cites no misrepresentation; (d) none of the cited UTPA sections applies; (e) he alleges no actionable conduct; (f) he alleges no loss caused by disclosures he does not claim he read; (g) he does not plausibly allege willfulness; and (h) the UTPA's safe harbor bars these claims.

## II.    STATEMENT OF FACTS

### A.    OnPoint's History and Background.

OnPoint is a member-owned non-profit credit union founded in 1932 by school teachers. *See* https://www.onpointcu.com/our-story/.  Unlike banks, "[c]redit unions are nonprofit cooperatives, owned by their members and democratically controlled, that may only lend and pay dividends to their members and, as such, are disinclined by their nature and structure to engage in the kinds of practices regarded as predatory or abusive."[1]

---

[1] NCUA Opinion Letter 04-0147, Nat'l Credit Union Admin. at 3 (Feb. 10, 2004), https://www.ncua.gov/files/legal-opinions/OL2004-0147.pdf.

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

### B.    The Account Agreement.

The Account Agreement and OnPoint's Fee Schedule form the parties' contract and govern how transactions are processed, "as well as when fees may be assessed."  FAC ¶¶ 14, 21. The Account Agreement explains how and when OnPoint charges non-sufficient funds ("NSF") fees, overdraft fees, and ATM fees, and the Fee Schedule explains how much those fees are.

**NSF and Overdraft Fees.**  The Account Agreement states that "[c]hecks or other transfer or payment orders which are drawn against insufficient available funds ***will be*** subject to a service charge set forth in the Rate and Fee Schedule."  FAC Ex. B at 14 (emphasis added); *id.* at 16 ("You will be subject to a charge for each item whether paid or returned as set forth in the Rate and Fee Schedule.").  OnPoint makes a daily determination as to whether there are sufficient funds available for payment, and that determination is tied to when a member's "check or item is presented to" OnPoint.  *Id.* at 16.  Where, as here, Plaintiff's ACH payments were presented against an insufficient account balance on different dates, the Account Agreement explains that Plaintiff is subject to a charge for "each" such instance.  *Id.*  When OnPoint *pays* a request despite insufficient funds, there is "an Overdraft Fee for each paid overdraft check or item."  *Id.* at 17.  Where OnPoint *returns* (or "do[es] not pay") a request for insufficient funds, "there is an NSF/Returned Item fee per check or item" returned.[2]  *Id.*  The Account Agreement's provisions thus explain that NSF and overdraft fees are triggered by ***presentment*** of items against insufficient funds on a given day.  Contrary to Plaintiff's allegations, the Account Agreement ***never*** uses the word "single" in connection with fees.  FAC ¶¶ 15, 17, 20, 22, 24-25.

Plaintiff also quotes the Fee Schedule, which discloses the amount (but not the trigger) of each NSF or overdraft fee.  FAC Ex. A at 2.  The Fee Schedule discloses the $30 NSF fee, and that it applies to "***items*** returned" for insufficient funds, whereas the $30 overdraft fee applies if an "***item*** [is] paid." *Id.*  (emphasis added).  The Fee Schedule confirms multiple fees may arise from returned payments but only one overdraft fee arises if the item is paid.

---

[2] The Account Agreement notes that checks presented and returned for insufficient funds may be "re-presented" for payment by Plaintiff's merchants, and that OnPoint will "pay or return" the re-presented payment request "as if the original" were presented to OnPoint—i.e., as a new transaction, with potential for another fee if there remains insufficient funds.  FAC Ex. B at 13.

Page 3 – DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

**ATM Usage and Fees.** The Account Agreement explains the four different ATM transactions a member can make: (a) deposits to checking and savings accounts; (b) withdrawals from checking and savings accounts; (c) advances from an OnPoint line of credit; or (d) balance inquiries as to any OnPoint accounts. FAC Ex. B at 28. Those disclosures further explain that OnPoint members can engage in any of these transactions ***without*** a fee at an OnPoint or partner ATM. *Id.*[3] OnPoint also explains, however, that if a member uses ATMs "operated by any other institution or network," the member may be charged fees "by that entity and [OnPoint]." *Id.* If a member uses a non-network ATM and "elect[s] to complete" any of the four permitted transactions, an "ATM surcharge ***will be debited*** from [the member's] account." *Id.* at 54 (emphasis added). The Account Agreement thus discloses how and when ATM fees arise. The Fee Schedule then discloses the ATM fee ***amount***, specifically flagging that balance inquiries are subject to a fee: $2.00 for "ATM Withdrawal/Balance Inquiry." FAC Ex. A at 2.

**Notification of Errors.** Under the Account Agreement, Plaintiff agreed to examine his monthly statements for any unauthorized transactions or other errors and report any issues to OnPoint within 30 days. FAC Ex. B at 22. The Account Agreement also confirms that the "statement will be considered correct for all purposes and [OnPoint] will not be liable for any payment made or charges to your account unless you notify" OnPoint within 30 days. *Id.* And for electronic funds transfers—governed by the EFTA, 15 U.S.C. § 1693(f)(1)—Plaintiff had 60 days to notify OnPoint of any unauthorized transactions. FAC Ex. B at 53-54. OnPoint provides instructions on how to challenge unauthorized transfers or errors, *id.*, and what the notice should contain. *Id.* at 58-59; *see also id.* at 13 (how to challenge retry payment requests). Plaintiff alleges the re-try payments causing his overdraft fee was unauthorized. FAC ¶¶ 12, 52.[4]

---

[3] OnPoint's network is exceptionally broad, with over 60,000 in-network ATMs. *See* https://www.onpointcu.com/locations-atms/ *Compare* Chase https://www.chase.com/digital/atms (16,000 ATMs).

[4] Plaintiff alleges he did not need to contact OnPoint because the fees were "intentional charges." *Id.* ¶¶ 60-62. But he confuses the effect of the alleged error (the overdraft fee) with the purported error itself (the unauthorized payment request). Had Plaintiff contacted OnPoint to dispute authorizing payments, OnPoint could have refunded the fees.

Page 4 – DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

**Free Balance Inquiry.** OnPoint allows members to check their balance for free (online, via phone, or via Mobile App), obviating the need to do so at an ATM. FAC Ex. B at 31, 39, 43.

### C.    The ACH Process and NACHA Rules.

Plaintiff challenges ACH debit requests, *see* FAC ¶¶ 50-52, made through an Automated Clearing House and governed by National Automated Clearinghouse ("NACHA") Rules, which Plaintiff accepted in the Account Agreement.  FAC Ex. B, at 12 (OnPoint permits members to "initiate … debits to [member] account[s] via ACH ('Automated Clearing House') transfer"; "ACH transactions are governed by the rules of the National Automated Clearing House Association" known as NACHA);[5] *see also Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 426 (6th Cir. 2018) ("ACH transactions are electronic payments made from one bank account to another and involve one party providing their account number and routing number"); *Andrichyn v. TD Bank, N.A.*, 93 F. Supp. 3d 375, 380-81 (E.D. Pa. 2015).

"There are five parties to an ACH transaction:  (1) the Originator [merchant]; (2) the Originating Depository Financial Institution, or ("ODFI") (the merchant's bank); (3) the ACH Operator (the Federal Reserve); (4) the Receiver [Plaintiff]; (5) the Receiving Depository Financial Institution, or ("RDFI")" (OnPoint).  *Lossia*, 895 F.3d at 426; *see also Andrichyn*, 93 F. Supp. 3d at 380-81.  "The Receiver [Plaintiff] is the party who authorizes the Originator [merchant] to introduce the transaction into the ACH Network."  *Lossia*, 895 F.3d at 426.  Once a merchant initiates the transaction, its "bank introduce[s] the transaction to the ACH Network by sending the transaction to the Federal Reserve (the ACH Operator), which in turn forward[s] the transaction[] to the Receiver's bank…so that [the Receiver's] account [can] be debited."  *Id.* at 426-27.  When a merchant initiates a debit transaction, "the consumer's bank [the RDFI] relies on a series of warranties received from the Originator through its bank that it has received proper authorization from the consumer before initiating a debit."  *Costoso v. Bank of Am., N.A.*, 74 F.

---

[5] Plaintiff's acceptance of NACHA Rules in the Account Agreement is binding, *Geiger v. Crestar Bank*, 778 A.2d 1085, 1092 (D.C. Ct. App. 2001) (incorporating NACHA rules binds customer), and NACHA Rules are subject to judicial notice.  *Cachet Fin. Servs. v. C & J Assoc., Inc.*, 373 F.Supp.3d 1303, 1304 n.2 (N.D. Cal. 2019).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Supp. 3d 558, 570-71 (E.D.N.Y. 2015) (internal citation omitted).  For any merchant to initiate

any ACH debit, Plaintiff had to authorize his merchant to initiate a debit request to OnPoint.

Under NACHA Rules, OnPoint **must** "honor all debits presented" by Plaintiff's authorized

merchants.  *Costoso*, 74 F. Supp. 3d at 571 (citing NACHA Rule 3.1.1; *Affinion Benefits Grp.*

*LLC v. Econ-O-Check Corp.*, 784 F. Supp. 2d 855, 876 (M.D. Tenn. 2011)).  With ACH debit

requests, the RDFI (OnPoint) must rely on the Originator's (merchant's) representation that the

debits were authorized, and honor the debit request.

### D.    NSF and Overdraft Fees Serve Important Purposes.

Plaintiff characterizes OnPoint's retry fees as "abusive."  FAC ¶ 19, 34-36.  But federal

regulators have long stressed the importance of these fees as an essential deterrent:

> **Deterring of misuse by borrowers**.  Certain deposit account services provided
> by banks, such as the honoring of checks drawn against nonsufficient funds, *have*
> *the potential for misuse*.  It has been the Office position that service charges
> should discourage customers from frequently writing checks in amounts greater
> than their account balances.  Such a practice, if left uncontrolled, provides a
> customer with automatic loans.  Alternatively, the bank could automatically
> dishonor all checks drawn on nonsufficient funds.  A bank, however, may hesitate
> to do this because of the embarrassment to its customer.  *An appropriate option*,
> the Office believes, is *to establish service charges to be levied in connection with*
> *the writing of nonsufficient fund checks by borrowers to discourage customers*
> *from frequently writing such checks*.

Office of the Comptroller of the Currency ("OCC"), Interpretive Ruling Re Nat'l Bank Serv.

Charges, 48 Fed. Reg. 54319-01, 1983 WL 110730 (1983) (emphasis added).  Indeed, OCC

regulations require regulated entities to set fees to "deter[]…misuse by customers of banking

services," to "maintain[] the safety and soundness of the institution."  12 C.F.R. § 7.4002(b)(2).[6]

NSF and overdraft fees help ensure safety and soundness by deterring misuse of accounts, and

OnPoint sets fees in a manner to encourage members to take steps to ensure the merchant on the

other side of the transaction—which has already provided goods or services—gets paid.[7]

---

[6] *Compare* Or. Div. Fin. Reg. http://www.cbs.state.or.us/dir/careerfair/docs/broch/dfr.pdf ("DFR
conducts safety and soundness examinations" and "reviews policies and procedures for
compliance with … consumer protection laws," and works "with federal and state regulators").

[7] Plaintiff cites a study addressing overdraft fees on ATM and point-of-sale debit card
transactions—irrelevant to the fees here—and wrongly implies that "[y]ounger, lower income,
and non-white account holders" more frequently incur fees.  FAC ¶ 10.  Not so.  Indeed, Moebs
Services (cited by Plaintiff, FAC ¶ 9), recognizes that FICO score is the best predictor of

Page 6 – DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Nor is it "abusive" to charge a second fee for a second payment request against insufficient funds, as Plaintiff suggests.  FAC ¶¶ 19, 34-46.[8]  Absent a second fee, members have no incentive to bring accounts current, placing OnPoint at risk of unsafe and unsound practices and forcing it to incur unrecoverable costs for each additional payment request.

### E.    Plaintiff and His Fees.

South is a current OnPoint member.  FAC ¶ 5.  He does not allege he ever contacted OnPoint to claim that a retry payment request was unauthorized.  South alleges that on November 30, 2020, his merchant FUTU—a day-trading platform South uses, *see* https://www.fututrade.com/—presented an ACH payment request that OnPoint returned for insufficient funds, causing an NSF fee he admits was proper.  FAC ¶¶ 50-51.  He alleges that "[u]nbeknownst" to him, and "without [his] request," FUTU re-presented the payment request two days later, when he again lacked sufficient funds, but this time OnPoint paid the item and charged an overdraft fee.  *Id.* ¶ 52.  South also alleges that in January 2020, he withdrew funds from a non-network ATM.  FAC ¶ 94.  Before withdrawing funds, the ATM operator (***not OnPoint***), "prompted" South to check his balance, "and he did so."  *Id.*  He alleges that OnPoint charged him $2.00 for each transaction (the withdrawal and the balance inquiry).  *Id.*

### F.    Plaintiff's Claims and the Putative Class.

Plaintiff sues on behalf of two Oregon classes—one for the overdraft-fee theory and one for the ATM-fee theory—and brings contract and UTPA claims.  *Id.* ¶¶ 97, 107-135.

---

overdraft usage, and that "gender, age, occupation, income, and wealth were found ***not*** to correlate to overdraft behavior."  Moebs Servs., Who uses Overdrafts (June 2009) (emphasis added), *available at*:  http://www.moebs.com/press-releases/ctl/details/mid/380/itemid/194.

[8] Plaintiff claims charging two fees for two separate presentments is "abusive" but "not universal," claiming that, for example, Chase Bank does not charge "more than one fee" if a payment request is re-presented after being returned for insufficient funds.  FAC ¶ 19.  Plaintiff is wrong.  On the same facts, Plaintiff would have received two (larger) fees from Chase as well.  Chase expressly warns its customers that it ***will*** charge an overdraft fee if a payment request was previously returned for insufficient funds:  "The same check or ACH item submitted multiple times by a merchant may result in ***both*** a Returned Item [NSF] Fee and an Insufficient Funds [Overdraft] Fee."  Chase Total Checking, A Guide to Your Account, *available at*, https://www.chase.com/content/dam/chasecom/en/checking/documents/clear_simple_guide_total.pdf (emphasis added).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4851-2560-5603v.12 0117323-000002

# III.    ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide more than just "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, a plaintiff must provide the grounds of entitlement to relief; "formulaic recitation of the elements of a cause of action will not do." *Id.*  The Court may consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion into one for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  And where the Complaint's allegations contradict documents referenced in the Complaint, the documents control.  *Steckman v. Hart Brewing, Inc.*, 143 F3d 1293, 1295-96 (9th Cir. 1998).

## A.    Federal Law Controls and Also Preempts Plaintiff's Claims.

Plaintiff spends four pages and 10 paragraphs quoting disclosures from *other* financial institutions he believes OnPoint should have mimicked to better disclose NSF and overdraft fees.  FAC ¶¶ 24-44.  Plaintiff contends that "***because*** OnPoint provided no such disclosures," it breached its contract.  *Id.* ¶ 44 (emphasis added).  He also claims OnPoint is liable for *not* having on-screen fee disclosures at non-network ATMs.  *Id.* ¶¶ 70-77.  The gravamen of these claims is that OnPoint is liable for *not* making particular disclosures.[9]  But this is exactly what federal law preempts—Plaintiff may not use state-law claims to mandate new or different disclosures.

Congress may preempt state law "either expressly through the statute or regulation's language or impliedly through its aim and structure."  *Whittington v. Mobiloil Fed. Credit Union*, 2017 WL 6988193, *6 (E.D. Tex. 2017) (citing *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)), *aff'd* 780 Fed. App'x. 171 (5th Cir 2019).  Federal regulations have "no less pre-emptive

---

[9] This is a theme throughout the FAC, where Plaintiff claims OnPoint is liable because:  (a) it did not use the magic words "per presentment" for overdraft fees; (b) it did not separate "withdrawal" and "balance inquiry" into separate line items; (c) there is "zero indication" and "zero expectation" about fee assessments based on the Fee Schedule; (d) the contract "never discusses" when multiple NSF (or overdraft) fees or ATM fees will result; (e) OnPoint's "omissions" and alleged failure to "fairly disclose," "never warn[]," and "never state outright" the risk of multiple fees for multiple transactions is somehow unfair; and (f) it "mischaracterized … its true fee practices."  FAC ¶¶ 27, 29, 34, 76-77, 87-89, 92-93, 95-96, 109 130(a)-(b).

4851-2560-5603v.12 0117323-000002
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

effect than federal statutes." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).  Implied preemption exists when state law "actually conflicts" with federal law, such as "where ...  the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes of the objectives of Congress." *Whittington*, 2017 WL 6988193, *6; *see also Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712, 722 (9th Cir. 2012).

Federal preemption thus reaches beyond laws directly regulating federally-regulated conduct to state-law claims (including contract claims) challenging conduct falling within the preemptive scope of federal regulation:  "Regardless of the nature of the state law claim alleged ...  the proper inquiry is whether the legal duty that is the predicate of Plaintiffs' state law claim falls within the preemptive power of the [statute] or regulations promulgated thereunder." *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1038 (9th Cir. 2008); *cf. Gutierrez,* 704 F.3d at 722–25 (federal law preempted claim that would dictate bank's fees and require additional disclosures).

### 1.    The Federal Truth In Savings Act Preempts Plaintiff's Claims.

The federal Truth in Savings Act, 12 USC. § 4301 *et seq*., which applies to all federally insured financial institutions (including OnPoint, *see* Ex. B at 60), preempts Plaintiff's claims because he seeks to use state law to require his preferred disclosures. TISA's purpose is to "require the clear and uniform disclosure of the fees that are assessable against deposit accounts, so that consumers can make a meaningful comparison between the competing claims of depository institutions with regard to deposit accounts." 12 U.S.C. § 4301.  Among the TISA regulations promulgated by the National Credit Union Administration ("NCUA"), the federal insurer for credit unions, is 12 C.F.R. § 707.1, which explains that the purpose of the TISA is "to enable consumers to make informed decisions about accounts at depository institutions," and in particular, to govern "disclosures so that members and potential members can make meaningful comparisons among depository institutions." *Id.* § 707.1(b).  TISA regulates disclosures over "[t]he amount of any fee that may be imposed in connection with the account (*or an explanation of how the fee will be determined) and the conditions under which the fee may be imposed.*'"

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

12 C.F.R. § 707.4(b)(4) (emphasis added). TISA's regulations emphasize that "*State law*
*requirements that are inconsistent with the requirements of the act and this part are*
*preempted* to the extent of the inconsistency." *Id.* § 707.1(d) (emphasis added). To ensure
uniformity, regulators—not private parties—enforce TISA. 12 C.F.R. § 707.9; *Vathana v.*
*EverBank*, 770 F.3d 1272, 1278 (9th Cir. 2014). Congress *repealed* any private right of action
for TISA disclosure violations, limiting enforcement to administrative agencies. 12 U.S.C.
§ 4310; Act of Sept. 30, 1996, Pub. L. 104-208, § 2604(a), 110 Stat. 3009, 3009-470 (1996).

Courts interpreting TISA have dismissed claims identical to Plaintiff's as preempted. For
example, in *Lambert v. Navy Federal Credit Union*, 2019 WL 3843064 (E.D. Va. 2019), plaintiff
filed a putative class action on the same theory—i.e., that Navy Federal improperly assessed
NSF fees on re-presented ACH presentments. The plaintiff there, as here, tried to use state law
to require Navy Federal to make additional or different disclosures before it could charge a
second fee for the return of a re-presented ACH item. The court dismissed all claims with
prejudice. In doing so, the court held that to "the extent Plaintiff challenges a perceived failure
to disclose, the specific language used in the disclosure, or the fairness of the fee practice itself,
however, those arguments are clearly preempted" by TISA. *Id.* at *3. That is *precisely* what
Plaintiff alleges here—that OnPoint failed to make specific disclosures, failed to use specific
language (e.g., "per presentment"), and that the fee practice itself is "a deceptive and unfair act."
FAC ¶ 13; *see also id.* ¶ 34 (prior failure to use "per presentment"), ¶¶ 35-43 (failure to use
language adopted by other entities), ¶¶ 63, 77 (fee practice is not "fair").[10]

Likewise, in *Whittington*, the court held that TISA preempted plaintiff's fraud claims tied
to overdrafts because plaintiff premised those claims on the allegation the credit union had
"fail[ed] to disclose" its practice of charging multiple fees "for the same transaction." 2017 WL

---

[10] The Oregon legislature knows how to bar financial institutions from charging multiple fees for
re-presented payments requests, because it has done so for certain payday lenders. *See* ORS
725A.060(1)(c)(B). That the legislature has limited that ban to payday lenders confirms that that
legislature does not otherwise believe that charging retry fees is somehow unfair.

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

6988193, *8–9.  That is the same core argument Plaintiff raises here and the Court should

dismiss those claims as preempted by TISA for the same reason.  *See, e.g.*, FAC ¶ 32 (failure to

adequately disclose overdraft and NSF fees); ¶ 74–75 (failure to adequately disclose ATM fees).

Most recently, in *Foltz v. Matanuska Valley Federal Credit Union*, 2021 WL 865542

(Alaska Super. 2021) the court agreed that TISA preempted the same claims:

> [T]his Court agrees with MVFCU that Foltz's state law claims regarding the
> federal credit union's failure to disclose certain fee practices or any perceived
> unfairness in the fee practices themselves are preempted.  To the extent he
> challenges a perceived failure to disclose, the specific language used in the
> disclosure, or the fairness of the fee practice itself is clearly preempted.  Here,
> Foltz's claims that MVFCU fails to disclose its true fee practices and that its
> actual fee assessment practice is unfair are preempted.

*Id.* * 4.  So too, here.

To dodge preemption, Plaintiff tries to couch his failure-to-disclose claims as a breach of

contract claim—despite the dozens of allegations to the contrary, *see* fn. 9, *supra*.  But the FAC

alleges that OnPoint is liable "*[b]ecause* [it] provided no such disclosures"—making causation

turn on an alleged failure to disclose.  FAC ¶ 44 (emphasis added).  Plaintiff's effort to dress up a

failure-to-disclose claim as an affirmative contract breach is meritless.  For example, the court in

*Cinar v. Bank of America, N.A.*, 2014 WL 3704280 (D.  Md. 2014), examined TISA in detail,

emphasizing that the purpose of the statute was to ensure "uniformity in the disclosure of terms

and conditions on which ... fees are assessed."  *Id*. at *3 (citing 12 U.S.C. 4301(a)).  Plaintiff

there tried to use state law to mandate disclosures, which the court held TISA preempted:

> [Plaintiff] cannot simply frame a disclosure issue as a breach of contract claim to
> avoid federal law addressing disclosure requirements.  Stripped of the contractual
> veneer with which [Plaintiff] envelops her arguments, her claim is simply that the
> Bank erred in failing to disclose the [challenged fee]....  If the Court were to find
> for [Plaintiff], it would essentially require the Bank to disclose [this fee this way]
> in the future, thereby conflicting with the clear intent of Congress to provide
> uniform disclosure requirements for national banks.

*Id*. at *4.  The same logic applies to Plaintiff's overdraft-fee claims and ATM-fee claims, and the

Court should dismiss the FAC as preempted.  *See also Page v. Alliant Credit Union*, 2020 WL

5076690, *4 (N.D. Ill. 2020) ("Page compares Alliant's practices to other financial institutions"

by citing different disclosures, but "Page's failure to disclose claims are preempted by TISA.").

Page 11 – DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

2.    **The EFTA Controls and Preempts Plaintiff's Claims.**

The EFTA preempts state laws inconsistent with its provisions:

> [EFTA] does not annul, alter, or affect the laws of any State relating to electronic funds transfers, except to the extent that those laws are inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency.

15 U.S.C. § 1693q.  Plaintiff's claims are inconsistent with the EFTA in at least two ways.

*First*, his claims are inconsistent with the EFTA's notice obligations.  The EFTA covers any electronic funds transfer—which includes a balance inquiry or an unauthorized withdrawal—and provides that OnPoint members must contact it within 60 days to resolve any error, or OnPoint is absolved of liability.  15 U.S.C. § 1693f(a) (60-day period); 15 U.S.C. § 1693f(f) (unauthorized transfers are EFTA "errors"), *cf.* FAC ¶ 52 (alleging unauthorized payment); 15 U.S.C. § 1693g(a) (consumer bears liability for failing to timely report error).  The Account Agreement incorporates these obligations.  FAC Ex. B at 53-54.  Thus, to determine whether Plaintiff complied with the Account Agreement as alleged, FAC ¶ 115, the Court must resolve whether he complied with federal law (the EFTA).  But Plaintiff does not (and cannot) allege he complied with the EFTA or the Account Agreement's notice provisions.  Instead, Plaintiff attempts to plead around his obligations by conflating the errors (allegedly unauthorized transfers) with the resulting fees.  FAC ¶¶ 60-62.  But crediting his legal conclusions in this manner would provide an end-run around his EFTA duty to contact OnPoint to challenge unauthorized payment requests.  To the extent a plaintiff *could* use contract claims or the UTPA to avoid EFTA's notice obligations, EFTA would preempt those claims as "inconsistent" with EFTA's provisions.  *See Chen v. Bank of Am.*, 2019 WL 9633650, *7 (C.D. Cal. 2019).

*Second*, Plaintiff's claims are inconsistent with OnPoint's disclosure obligations under the EFTA.  Plaintiff acknowledges that "federal law requires" ***ATM operators*** to make specific on-screen disclosures as to fees at ATMs for withdrawals or balance inquiries.  FAC ¶¶ 70-71 (citing 15 U.S.C. § 1693b(d)(3)); *see also* 15 U.S.C. § 1693b(d)(3)(D)(ii) (defining "electronic funds transfer" as including balance inquiry).  OnPoint's EFTA obligations differ.  The EFTA

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

requires that OnPoint disclose *in the Account Agreement* the potential for ATM fees—as OnPoint does here—but it does *not* require OnPoint to provide an on-screen disclosure at non-network ATMs that there are two fees if Plaintiff checks his balance *and* withdraw funds, for the obvious reason that OnPoint *cannot* control what appears on a third-party ATM screen:

> Implicit in Plaintiffs' argument is the suggestion that BofA was required to provide notice on the ATM screen of the balance inquiry fee and receive Plaintiffs' authorization via an ATM screen prompt, yet the court knows of no authority requiring such an obligation and Plaintiffs have provided none. …
>
> Had the Board wished to dictate precisely the terms in which the initial disclosure needed to be written, such a regulation could have been crafted. Furthermore, the Board chose to write a specific provision regarding what notice must be presented on-screen to the consumer before they are committed to completing a balance inquiry if an ATM operator is going to impose a fee for the inquiry, but there is no such requirement that BofA give its customers any notice at OON ATMs of any fees it may impose for balance inquiries.

*Schertzer v. Bank of Am.*, 445 F. Supp. 3d 1058, 1082,1087-88 (S.D. Cal. 2020) (dismissing same ATM fee claims). *See also Azose v. Wash. Mut. Bank*, 558 F. Supp. 2d 366, 373-74 (S.D.N.Y. 2008) ("Washington Mutual had no obligation … to provide notice to Plaintiffs at the ATM of any fees that it may impose when Plaintiffs utilized the Chase ATM to conduct a balance inquiry of their Washington Mutual accounts."). These cases recognize the basic reality that OnPoint *cannot* control the messages (or prompts) Plaintiff sees at ATMs OnPoint does not control.

Undeterred, Plaintiff seeks to use state law to impose ATM-operator disclosure obligations on OnPoint, because he expected on-screen ATM disclosures explaining that engaging in two transactions would result in two fees. FAC ¶¶ 71-76. He alleges consumers "expect a fair fee disclosure *at the ATM*" and that OnPoint's actions are somehow "exploit[ing] consumers' reasonable expectation[s]" by not providing on-screen ATM fee disclosures. *Id.* ¶ 74. *See also id.* ¶ 75 ("there is simply no warning *at the ATM* that a balance inquiry alone could incur a fee") (emphasis added). Plaintiff's claims thus create a direct conflict with the EFTA's requirements as applied to OnPoint because he seeks to impose an obligation on OnPoint that it cannot meet (on-screen disclosures at third-party ATMs) in an area Congress specifically limited to ATM operators. *E.g., Schertzer*, 445 F. Supp. 3d at 1088.

Page 13 – DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

**B.      Plaintiff Fails to State a Claim for Breach of Contract.**

Plaintiff's contract theories fail because he did not comply with the Account Agreement's notice requirement and because OnPoint charged fees exactly as promised.

As to NSF and overdraft fees, the triggering event is the presentment of a payment request against insufficient funds on a given day, which OnPoint either returns (resulting in an NSF fee) or pays (an overdraft fee).  Because the challenged overdraft fee stems from a separate request, presented on a separate day, against insufficient funds, the overdraft fee was proper.  As to ATM fees, the Account Agreement states that if Plaintiff uses a non-network ATM, an "ATM surcharge will be debited" for every completed transaction.  FAC Ex. B. at 28, 54.  Here, Plaintiff used a non-network ATM to complete balance inquiries *and* cash withdrawals, so OnPoint charged a fee for each of those actions, as promised.

**1.      Plaintiff's Failure to Provide Pre-Suit Notice Bars His Claims.**

Under the Account Agreement, Plaintiff agreed that each monthly statement would "be considered correct for all purposes and [OnPoint] will not be liable for any payment made or charges to your account unless you notify" OnPoint within 30 days.  FAC Ex. B at 22.  Plaintiff also promised to notify OnPoint of any unauthorized electronic funds transfers within 60 days from when the statement was made available.  *Id.* at 53–54.  Had Plaintiff complied with the plain terms of the Account Agreement, OnPoint could have refunded any unauthorized fees and avoided this litigation altogether.  Plaintiff does not allege compliance with this condition precedent as to any challenged fee before filing this lawsuit, and this is fatal to his claims.

Courts enforce pre-litigation notice requirements and dismiss complaints that fail to show compliance with this type of provision.  *See, e.g., Overby v. Chase Manhattan Bank*, 351 F. Supp. 2d 219, 221, 225 (S.D.N.Y. 2005) ("Because of plaintiff's failure to notify Chase within the required time period, he is now barred from asserting any of his banking claims."); *Giotta v. Ocwen Loan Servicing*, 706 Fed. Appx. 421, 422-23 (9th Cir. 2017).  Plaintiff's failure to comply with the pre-suit notice obligation is fatal because to state a claim, Plaintiff must allege the existence of a contract, "its relevant terms, [Plaintiff's] full performance and lack of breach and

Page 14 – DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

defendant's breach resulting in damage to plaintiff." *Fleming v. Kids and Kin Head Start*, 71 Or. App. 718, 721, 693 P.2d 1363, 1364 (1985).  Plaintiff cannot show full performance.

Indeed, on similar facts, a court in New York recently dismissed a putative class action challenging overdraft fees based on a pre-litigation notice provision.  *Crockrom v. Bank of Am., N.A.*, 2020 WL 6747034, *4-*5 (S.D.N.Y. 2020) ("Plaintiff's breach-of-contract claim is therefore barred as a claim 'relating to the unreported problem.'").  Because Plaintiff does not (and cannot) allege he satisfied this pre-litigation notice requirement as to any non-refunded fees, his contract claims are barred.

### 2.    Plaintiff's Contract Claims Fail on the Merits.

Plaintiff's contract claims also fail on the merits because the Account Agreement unambiguously allows it to assess the overdraft and ATM fees he challenges—each of which OnPoint charges only when engaging in conduct that costs OnPoint money.

Before analyzing the controlling language, an analogy helps explain why Plaintiff's NSF and Overdraft-fee theory elevates form over substance:  Consider a consumer who makes a purchase by writing a check.  The merchant goes to cash the check, but it bounces, and the consumer's credit union returns the check and imposes an NSF fee.  The consumer responds by again sending a check to the same merchant, for the same amount, for the same purchase—a retry payment—and that check also bounces, but the credit union decides to cover the payment under its overdraft policy.  Under Plaintiff's theory, the credit union cannot impose a second fee because these payments were for the same purpose, even though the consumer bounced two separate payments, and even though his credit union had to process two payment requests (and actually paid the second request).  The only difference between this hypothetical and Plaintiff's theory is that Plaintiff delegated his retry payment request to his merchant.  But delegation of payment requests to third parties does not change Plaintiff's contract terms, which allow for NSF or overdraft fees each time a merchant presents a payment request against insufficient funds.

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Likewise, Plaintiff's ATM-fee theory fails to recognize that whenever Plaintiff uses a

non-network ATM for **any** purpose, it costs OnPoint money for each transaction—whether a

balance inquiry or a withdrawal.

> Foreign ATM transactions generate four fees. The cardholder must pay two of
> these fees—one to the ATM owner for use of the ATM (known as a "surcharge")
> and one to the card-issuing bank (known as a "foreign ATM fee"). **The card-
> issuing bank also pays two of these fees—one to the ATM network that routed
> the transaction (known as a "switch fee") and one to the ATM owner (known as
> an "interchange fee").**

*In re ATM Antitrust Litig.*, 686 F.3d 741, 745 (9th Cir. 2012) (emphasis added).  Where Plaintiff

uses a non-network ATM and engage in both a withdrawal and balance inquiry during the same

session, OnPoint pays **four** fees—two switch fees to the network operator and two interchange

fees to the ATM operator.[11]  *Schertzer*, 445 F. Supp. 3d at 1086 (non-network fees charged "to

recoup the costs [OnPoint] incurs in paying the wholesale fees to the ATM-owning bank and to

the network").  Limiting OnPoint to one fee no matter how many transactions occur would

increases OnPoint's costs for no reason—particularly where Plaintiff can get the same balance

information for free online, via phone, or via Mobile App.  *See* FAC. Ex. B at 31, 39, 43.

In granting a Motion to Dismiss the same retry-fee claims from the same counsel, one

court recently pointed out that the consequence of Plaintiff's theory is to remove any incentive to

bring accounts current or to ensure merchants get paid for goods or services already provided:

> **Some personal responsibility seems to be lacking**—"never mind that I didn't
> have the funds in my account to pay for an item/goods that I received and agreed
> to timely pay for, I shouldn't get more than one NSF fee" appears to be a cliff note
> version of the Plaintiffs' Complaint. … **NSF fees are designed to offset some of
> the bank's costs but also to incentivize the customer to have enough money to
> cover the claim**.

*Fenton v. Tri-County Bank & Trust Co.*, 2020 WL 8673276, *1 (Putnam Cnty. Super. Ct. Dec. 29,

2020) (granting motion to dismiss) *vacated by settlement*, (March 2, 2021) (emphasis added).

---

[11] *See also* How to Avoid Paying ATM Fees, available at https://www.onpointcu.com/blog/how-
to-avoid-paying-atm-fees/ ("[W]hen you use your ATM card at a financial institution other than
the one you bank with, your institution has to pay an interchange fee.").

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

a.    **OnPoint Discloses That It Will Charge a Fee Each Time an Item Is Presented Against Insufficient Funds and Returned.**

**The Contract Language is Unambiguous.**  Plaintiff's NSF and overdraft-fee contract claims fail because OnPoint complied with the Account Agreement.  OnPoint determines insufficient funds "at the time the check or item is presented" to OnPoint for payment.  FAC Ex. B at 16.  The Account Agreement explains that "[i]f **on any day** the available funds in [his] checking account[s] [was] not sufficient to cover checks and other items posted to [his] account[s]," he would be "***subject to a charge for each item whether paid or returned unpaid***." *Id.* (emphasis added).  That is what happened here:  Plaintiff's merchant presented separate payment requests on separate days against his account that lacked sufficient funds each time, so OnPoint charged a fee for each presentment, as promised.  This should end the inquiry.

**OnPoint Never Promises to Charge a "Single" Fee.**  To avoid this plain language, Plaintiff insists the Account Agreement promises OnPoint will only charge a "single" fee, no matter how many times OnPoint is forced to re-process a payment request and return it for insufficient funds (or pay it).  *See* FAC ¶¶ 15, 17, 18, 20, 22, 24.  The Court will look in vain for this promise, however, because the Account Agreement never uses the word "single" in the context of fees.  One court last year rejected the same argument (from the same counsel):

> Plaintiffs appear at the onset to attempt to mislead the court in its first count. … Specifically, the Plaintiffs claim that the word "single" (fee) appears in the documents—which the Defendant points out it does not. The adjective used is "an." Clearly, the bank can charge "an" NSF for each time the claim is submitted, pursuant to the plain reading of the terms.  … *[The Court] sets a Show Cause Hearing for Plaintiffs' counsel to appear, **as to why the court should not sanction for falsely stating to the court that the word "single" appears in the bank contract when it does not**.*

*Fenton*, 2020 WL 8673276, at \*1.  Here too, Plaintiff's interpretation invites the Court to insert language into the contract—a request incompatible with Oregon law.  ORS 42.230 ("[T]he office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted.").

**Other Courts Agree.**  Last year in *Winamaki v. Umpqua Bank*, 2020 WL 6861466 (Or. Cir. 2020), the same counsel brought the same retry-fee claim based on a disclosure substantively

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

identical to OnPoint's:  "If a check, item or transaction is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item for insufficient funds (non-sufficient funds - NSF)").  *Id.* at 1 n.1  The court dismissed the Complaint, holding that the "contract is unambiguous because defendant expressly disclosed to plaintiff that it may charge a $35 fee each time it pays or returns a transaction that would overdraw plaintiff's account."  *Id.* at 2.  The same reasoning applies here.  *Compare* FAC Ex. B at 16 (after determining sufficient balance "at the time the check or item is presented to us," [y]ou will be subject to a charge for each item whether paid or returned unpaid.").

Although each case turns on the contract language at issue (and the controlling state law), other courts have also seen through Plaintiff's theory.  In *Lambert*, the court reasoned:  "When Plaintiff's insurer 're-presented' the request for payment, it was a new ACH debit item—just as a second check would be a new check even if it was by the same merchant, in the same amount, for the same purpose—and was therefore eligible for a fee when it was returned for nonsufficient funds."  2019 WL 3843064, at *4.  The disclosures explained the credit union would assess an NSF fee for "each returned debit item."  *Id.* at *3.  Because the defendant "returned" the re-presented ACH request, the court held the second NSF fee complied with the disclosures and dismissed the complaint.  *Id.* at *3-4.

And in *Page*, the court held the singular use of the terms "item" or "charge" did not limit the defendant to a single NSF fee:

> Based on the singular use of the terms "charge" and "item," Page argues that Alliant can only charge one fee for a single transaction.  Again, Page reads this section in isolation ignoring the plain text of § 8b that states, "[i]f the amount of the item presented for payment exceeds the total available overdraft sources, the item will be returned as non-sufficient funds (NSF) and you will be charged applicable fees."  The language in these provisions ***does not promise members that Alliant will charge just one overdraft fee per transaction***.  Rather, … Alliant charges its members an overdraft fee every time a third-party payee presents an item for payment against insufficient available funds. ***Page's stilted reading of the Membership Agreement does not create any ambiguity***.

2020 WL 5076690, at *4 (emphasis added).

**Third-Party Disclosures Are Irrelevant.**  Other courts have seen through Plaintiff's attempt to cite third-party disclosures as a basis for liability on a different contract.  *See Haines v.*

Page 18 – DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Wash. Trust Bank*, 2020 WL 6861458, \*2-3 (Wash. Sup. Ct. Nov. 9, 2020).  In *Haines*, the court

rejected plaintiff's citation to other disclosures as a basis for finding the defendant's disclosures

ambiguous, and held that the trigger for an NSF fee was not whether it was for a single invoice,

but whether plaintiff's merchant presented an ACH payment request that the bank returned due

to insufficient funds.  *Id.* at \*3.  The court in *Haines* found, on similar facts, that the defendant

bank "did precisely what [it] said [it] would do— [it] charged a $30 NSF fee each time a third-

party made an ACH withdrawal request when insufficient funds existed." *Id.*[12]  *See also Choy v.*

*Space Coast Credit Union*, 2020 WL 3039243, \*3 (Fla. Cir. Ct. 2020) (dismissing multiple NSF

fee claim, and observing that plaintiff's examples of "much better" disclosures "cannot inform

the Court's analysis.  They are not relevant to whether the provisions at hand are clear and

unambiguous"); *Page*, 2020 WL 5076690, \*4 (N.D. Ill. 2020) ("That other financial institutions

use different language in relation to their overdraft policies does not establish any ambiguity.").

   **Plaintiff's Myopic Focus on the Word "Item" is Misplaced and Wrong.**  Nor should

the Court be swayed by Plaintiff's legal conclusion (couched as a factual allegation) that an

"item" must mean "all iterations of the same instruction for payment."  FAC ¶ 30.  Rather than

address how that word is used in the Account Agreement (or the NACHA Rules incorporated

into the Account Agreement), Plaintiff contends that "[r]easonable consumers understand any

given authorization for payment to be one, singular "'item.'"  *Id.* 31.  Plaintiff thus seeks to

define "item" as his authorization to his merchant to make a payment from his OnPoint account,

rather than his merchant's repeated requests to OnPoint to effectuate his request.  He is wrong.

   Indeed, in *Foltz*, 2021 WL 865542, the court rejected this same argument:

> The first ACH request was therefore returned and MVFCU waited for the
> merchant to submit another request for payment, which MVFCU was then
> obligated to process.  The Agreement therefore gives MVFCU the right to charge
> a fee for each presentment of an ACH request for payment, even if the request is
> by the same merchant, in the same amount, and for the same purpose.  The

---

[12] To date, the only appellate decision on this theory affirmed dismissal because the contract
provided that "a fee may be charged . . . each time a 'check, draft, transaction, or other item' . . .
posts to an account with insufficient funds and is paid or rejected" by defendant credit union.
*Saunders v. Y-12 Federal Credit Union*, 2020 WL 6499558, \*5 (Tenn. Ct. App. Nov. 5, 2020).

Page 19 – DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Agreement's language therefore supports MVFCU's interpretation and position that the contract is unambiguous. ***When Foltz's merchant "re-presented" the request for payment, it was a new ACH item and was eligible for a fee when it was returned for insufficient funds***.

*Id.* at *8 (emphasis added).

The NACHA Rules speak to this issue, and confirm that for ACH payments, every "request for the withdrawal of money from the deposit account" is a debit "entry," and that "each debit entry shall be deemed an 'item.'" *Diane Sales, Inc. v. Am. Express Centurion Bank*, 2014 WL 11429026, *2 (D. Md. 2014) (quoting NACHA Rules). NACHA Rule 8.7 explains:



*You are no longer on nacha.org

Nacha / 2021 Nacha Operating Rules / Article Eight Definitions of Terms Used in These Rules

## Section 8.37 "Entry"

(a) an order or request for the transfer of money to the deposit account or loan account of a Receiver, or general ledger account of an RDFI (a "credit Entry");

(b) an order or request for the withdrawal of money from the deposit account of a Receiver, or general ledger account of an RDFI (a "debit Entry"); and

(c) a Non-Monetary Entry to the deposit account or loan account of a Receiver, or general ledger account of an RDFI.

An Entry must comply with the requirements of Appendix Three (ACH Record Format Specifications), Appendix Four (Return Entries), Appendix Five (Notification of Change), or Appendix Six (Acknowledgment Entries), as applicable. For all Entries except RCK Entries, each debit Entry shall be deemed an "item" within the meaning of Revised Article 4 of the Uniform Commercial Code (1990 Official Text) and that Article shall apply to such Entries except where the application is inconsistent with these Rules, in which case these Rules shall control. An RCK Entry is an item as that term is defined by Revised Article 4 of the Uniform Commercial Code only for the limited purposes of presentment as set forth in Article 4–110(c) and notice of dishonor as set forth in Article 4–301(a)(2).

*See* App'x 1 hereto (highlighting added).

Thus, under NACHA's rules, every merchant's ACH request for payment from OnPoint on behalf of Plaintiff—even if the payment request is for the same underlying purchase—is a ***new*** transaction, subject to a ***new*** fee because OnPoint is required to process the new request. *See Volden v. Innovative Fin. Sys., Inc.*, 440 F.3d 947, 949-50 (8th Cir. 2006) (citing NACHA Rules; noting "Each presentment resulted in a $20.00 charge from [plaintiff's] credit union.").

Page 20 – DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Federal regulators agree.  For example the Consumer Financial Protection Bureau (responsible for implementing the EFTA through Regulation E), recognizes that "[i]f an item (such as a check or ACH debit) was presented more than once, *each occurrence is counted as a separate transaction*."  Data Point:  Checking Account Overdraft (CFPB 2014), at 6 n.4, *available at* https://files.consumerfinance.gov/f/201407_cfpb_report_data-point_overdrafts.pdf (emphasis added).  And the OCC's consumer guidance on NSF and overdraft fees reiterates that each time a payment is presented, it is subject to a new fee:

> Generally, a bank may attempt to deposit the check two or three times when there are insufficient funds in your account.  However, there are no laws that determine how many times a check may be resubmitted, and there is no guarantee that the check will be resubmitted at all.

> Overdraft or *insufficient funds fees can be assessed each time the check is submitted*.  Review your bank's deposit account agreement for its policies regarding overdrafts and the presentment of checks.

OCC, Help Topics, Bank Accounts, Non-Sufficient Funds Fees & Overdraft Protection, *available at* https://www.helpwithmybank.gov/help-topics/bank-accounts/nsf-fees-overdraft-protection/overdraft-protection-programs/overdraft-resubmitted.html (emphasis added).

But for the purposes of this Motion, whether a re-presented item is a "new" item or the same item *does not matter*.  OnPoint discloses that each time it returns or pays a payment request presented against insufficient funds, there is a $30 fee "*for each item whether paid or returned unpaid*."  *Id.* (emphasis added).  Ex. B at 16 (emphasis added).  NSF and overdraft fees are tied to the payment or return of an item against insufficient funds, so whether the re-presented item is a *new* item (it is) or the *same* item (as Plaintiff argues) is irrelevant.  The Court should dismiss the overdraft-fee contract claim because OnPoint did exactly what it said it would.

### b.  OnPoint Complies With Its Disclosures By Charging a Fee For Each Transaction Completed at a Non-network ATM.

Plaintiff claims OnPoint fails to disclose that when he engages in two transactions at a non-network ATM—a balance inquiry and a cash withdrawal—OnPoint will charge him a fee for *each* transaction.  Plaintiff is wrong.

Page 21 – DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

The Account Agreement separates out the four distinct transactions one can complete using a debit card, *see* FAC Ex. B at 28, but explains that if members use a non-network ATM, OnPoint may change fees if a member "elect[s] to complete" a transaction. *Id.* at 54. Thus, every time an OnPoint member decides to check a balance and agrees to withdraw funds, there is a fee for each of those completed transactions. OnPoint thus discloses **how** and **when** ATM fees arise and that there is a fee for every completed transaction. OnPoint's Fee Schedule discloses the **amount** of non-network ATM fees, explaining that there is a $2.00 fee for "ATM Withdrawal/Balance Inquiry." FAC Ex. A at 2. Read together, these disclosures explain that OnPoint will charge a $2.00 fee for each completed balance inquiry transaction and each completed withdrawal transaction. This defeats Plaintiff's ATM-fee contract claim.

Plaintiff appears to pin his ATM-fee claims on the fact that the Fee Schedule—which discloses the amount, rather than the basis for, ATM fees—used "/" to separate "ATM Withdrawal/Inquiry" within the same line indicating a $2.00 fee for those transactions. *See* FAC ¶ 82 & Ex. A at 2. As best as OnPoint can tell, Plaintiff appears to argue that use of "/" in this context must be conjunctive—i.e., that regardless the contrary disclosures in the Account Agreement, that OnPoint may charge "a *single* $2.00 OON Fee on" *everything* that transpires at a given "ATM use." *Id.* ¶ 83 (emphasis in original). This makes no sense and is divorced from the language in the Account Agreement.

No reasonable reading of "ATM Withdrawal/Balance Inquiry," when combined with the other disclosures, would suggest that the virgule— the "/"—must mean "and" rather than "or." Courts consistently construe the use of "/" as meaning one of several alternatives, not a combination of those alternatives. *See, e.g., Sajo v. Roberts*, 304 Or. 414, 420, 747 P.2d 214 (1987) (interpreting the "virgule (/) between" two words to mean "or"); *see also Knous v. United States,* 683 Fed. Appx. 859, 864 (11th Cir. 2017) ("Courts have repeatedly recognized that a slash, solidus, or virgule is used to separate alternatives."). An example shows the absurdity of Plaintiff's position: if Plaintiff went to a restaurant, and was shown a menu that listed side-dish

Page 22 – DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

options as "Soup / Salad / Fruit Cup — $2.00," no reasonable person would believe that the restaurant was offering soup *and* salad *and* a fruit cup for $2.00. Common sense should prevail.

Any other reading would lead to the absurd consequence that Plaintiff's decision to engage in additional non-network transactions—like a balance inquiry—should impose unrecoverable costs on OnPoint, which must pay a fee to the ATM network or ATM operator for each balance inquiry and each withdrawal. *In re ATM Fee Antitrust Litig.*, 686 F.3d at 745. Plaintiff's admission that on certain occasions, he used non-network ATMs to complete two transactions—balance inquiries *and* cash withdrawals, FAC ¶ 94—means that OnPoint could recover two fees (one for each transaction). This is fatal to his ATM-fee contract claims.

### C.    OnPoint Did Not Breach the Duty of Good Faith and Fair Dealing.

Plaintiff's duty of good faith claims fail for the same reasons his breach of contract claims fail—OnPoint's contracts allow its conduct. A party cannot violate the duty of good faith and fair dealing by "invoking its express, written contractual right." *Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 320 Or. 638, 645, 891 P.2d 639 (1995) (dismissing implied covenant claim where loan agreement allowed challenged actions). While the duty of good faith can effectuate a party's reasonable contract expectations, the contract itself embodies those expectations. *Uptown Heights*, 320 Or. at 647¬48; *see also Pac. First Bank v. New Morgan Park Corp.*, 319 Or. 342, 354, 876 P.2d 761 (1994). The duty "cannot contradict an express contractual term, nor otherwise provide a remedy for an unpleasantly motivated act that is expressly permitted by the contract." *Zygar v. Johnson*, 169 Or. App. 638, 645, 10 P.3d 326 (2000). Because the Account Agreement allows it to charge the challenged fees, Plaintiff's good-faith claims fail. *Uptown Heights*, 320 Or. at 645; *Marshall v. Wells Capital Mgmt., Inc.*, 2007 WL 4565164, *9 (D. Or. 2007) ("[C]onduct consistent with the terms of the contract cannot serve as the basis of a claim of violation of the duty of good faith.").[13]

---

[13] That Plaintiff couches his good faith claims in terms of OnPoint's "discretion." FAC ¶¶ 114, 124, makes no difference. The only "discretion" OnPoint exercised was whether or not to charge a fee—a decision the Account Agreement unilaterally delegates to OnPoint. *E.g. Pac. First Bank*, 319 Or. at 353 (exercise of unilateral discretion effectuates parties' expectations when

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

In addition, Plaintiff's duty of good faith claims are ***identical*** to his breach of contract claims, making them redundant. *See* FAC ¶¶ 103-128 (describing the claims for relief as "Breach of Contract, Including Breach of the Covenant of Good Faith and Fair Dealing"). Indeed, Plaintiff alleges that OnPoint breached its contract by "charging more than one fee on the same item," and the duty of good faith "through its overdraft practices." FAC ¶¶ 110, 113. Plaintiff's allegations regarding ATM fees are similar. *Compare* FAC ¶ 120 ("OnPoint has breached the express terms of its own agreements."), *with* FAC ¶ 124 ("OnPoint abused the discretion it granted to itself when it charged OON Fees that are not authorized by the Contract."). Because Plaintiff's allegations are merely re-packaged breach of contract claims, the Court should dismiss them as redundant. *See Glob. Exec. Mgmt. Sols., Inc. v. Int'l Bus. Machines Corp.*, 260 F. Supp. 3d 1345, 1377 (D. Or. 2017) (dismissing because "the alleged 'implied' terms and damages are duplicative of those asserted to be part of the express agreement"); *Ri Ky Roofing & Sheet Metal, LLC v. DTL Builders, Inc.*, 2018 WL 1528790, 3 (D. Or. 2018) ("[B]ecause [plaintiff] does not identify any facts evincing the breach of any objectively reasonable contractual expectation outside the express terms of the contract, the complaint does not currently state a plausible good faith claim.").

### D. Plaintiff's UTPA Claims Fail for Myriad Reasons.

Under ORS 646.638(1), an individual may enforce a violation of the UTPA only if that individual "suffer[ed] an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608." ORS 646.638(1). Accordingly, a plaintiff must show (1) a violation of ORS 646.608(1); (2) causation; (3) an "ascertainable loss"; and (4) willfullness by defendant. *See Luedeman v. Tri-West Const. Co.*, 39 Or. App 401, 403–04, 592 P.2d 281 (1979). Plaintiff's conclusory UTPA claims fail for the following reasons. *See* FAC ¶ 129–135.

contracts provide for unilateral exercise); *Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021, 1034 (D. Or. 2012) ("[W]hen a contract expressly provides for a unilateral exercise of discretion, the duty of good faith cannot circumscribe that discretion.").

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

### 1.    Plaintiff's ATM-Fee Claims are Time Barred

Plaintiff must bring his UTPA claims within one year.  ORS 646.638(6).  South's ATM-fee claims arose on January 2020 but he did not file this suit until February 2021, *id.* ¶¶ 94-95, barring any UTPA claim based on ATM fees.  Because South discovered OnPoint's practice of charging a fee for each transaction as of January 2020, but did not file suit until February 2021, any UTPA claim based on that theory fails, because after January 2020 Plaintiff acted with knowledge of the challenged practice.  *See Pearson v. Philip Morris, Inc.*, 358 Or. 88, 137, 361 P.3d 3, 33 (2015) (UTPA claims time barred if practice experienced earlier).

### 2.    Plaintiff's Vague UTPA Claims Do Not Satisfy *Twombly*.

Plaintiff must plead claims with sufficient factual support to establish a plausible entitlement to relief.  *Twombly*, 550 U.S. at 544; Fed. R. Civ. P. 8(a)(2).  Plaintiff here offers only "labels and conclusions" and "a formulaic recitation of the [UTPA's] elements," which "will not do[.]" *Twombly*, 550 U.S. at 555.  He alleges that by purportedly "failing to disclose that [it] would assess multiple fees on the same item and improper OON fees," OnPoint somehow violated ORS 646.608(1) subsections (e) and (k).  FAC ¶ 130(a).  But those UTPA provisions address representations that "real estate, goods, or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities" or "credit availability," and have nothing to do with overdraft or ATM fees.  Absent some allegation linking OnPoint's actions to real estate, goods, or services, Plaintiff fails to meet Rule 8's pleading requirements.  The remaining allegations simply cut and paste the text of each UTPA section and incorporate allegations by reference.  FAC ¶ 130.  This is precisely what *Twombly* and *Iqbal* bar.

### 3.    Plaintiff Fails to Allege Conduct Covered By the UTPA.

Plaintiff must identify specific conduct that violates an enumerated provision of the UTPA, which does not regulate practices that are "not within the ambit of the statute." *Lamm v. Amfac Mortg. Corp.*, 44 Or. App. 203, 205, 605 P.2d 730 (1980).  There is no "catch-all" UTPA provision under which private citizens may assert general claims for unfairness.  ORS 646.608(1)(u); ORS 646.608(4) (no private right of action under catch-all provision absent

Page 25 – DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Attorney-General authorization).  Plaintiff must allege conduct specifically made unlawful by the UTPA.  *Colquitt v. Mfrs. & Traders Trust Co.*, 144 F. Supp. 3d 1219, 1231 (D. Or. 2015).

Plaintiff alleges OnPoint violated ORS 646.608(1)(e), (k), and (t), but none of these provisions reaches assessment of overdraft or ATM fees.  The only court to directly address the issue has held that Oregon's UTPA does ***not*** apply to overdraft fees.  *In re Checking Acct. Overdraft Litig.*, 694 F. Supp. 2d 1302, 1327 n.15 (S.D. Fla. 2010).  This is because money, including in the form of a fee, in itself is not a good or service.  *Cullen v. Inv. Strategies*, 139 Or. App. 119, 126–28, 911 P.2d 936 (1996) (noting "[m]oney, however, is impossible to categorize. It may be used to purchase 'real estate, goods or services' but it is not itself one of those things," and concluding that material nondisclosures or misrepresentations of a loan's attributes are not actionable under the UTPA); *Roach v. Mead*, 76 Or. App. 83, 87, 709 P.2d 246 (1985) ("money is a medium, not an article, of commerce.").[14]  Since overdraft and ATM fees are not themselves a "good" or "service," Plaintiff's dispute does not fall within the parameters of the UTPA.

But even if overdraft or ATM fees were a good or service—and they are not—Plaintiff fails to allege facts showing violations of the provisions he cites.

**ORS 646.608(1)(e)** applies to representations "that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have."  Plaintiff identifies no OnPoint representations, let alone a good or service that lacks the stated attributes, so the Court should dismiss this claim.

**ORS 646.608(1)(k)** bars "[m]ak[ing] false or misleading representations concerning credit availability or the nature of the transaction or obligation incurred."  Plaintiff does not allege OnPoint made any representations regarding credit or about the nature of any transaction or obligation incurred, so the Court should dismiss this claim.  Likewise, this theory fails because

---

[14] Courts addressing similar statutes reach the same conclusion.  *E.g. Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 957 (N.D. Cal. 2009) (similar statute inapplicable to overdraft fees); *Lloyd v. Navy Fed. Credit Union*, 2018 WL 1757609, *18–20 (S.D. Cal. 2018) (same).

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Plaintiff fails to allege any misrepresentation independent of the contract. *See Thompson ex rel. Thorp Family Charitable Remainder Unitrust v. Federico*, 324 F. Supp. 2d 1152, 1169–70 (D. Or. 2004). And regardless, cases confirm that ORS 646.608(1)(k) relates solely to credit availability, financing agreements, and credit obligations—not overdraft or NSF fees. *Mendoza v. Lithia Motors, Inc.*, 2017 WL 125018, *5 (D. Or. 2017).

**ORS 646.608(1)(t)** only applies if "[c]oncurrent[ly] with tender or delivery of any real estate, goods or services" a defendant "fails to disclose any known material defect or material nonconformity." Plaintiff identifies no material defect or nonconformity stemming from any service provided by OnPoint, and the Court should thus dismiss this claim.

### 4.      Plaintiff Does Not Allege an Actionable Misrepresentation.

The Court should dismiss Plaintiff's UTPA claims for the additional reason that OnPoint abided by the terms of the Account Agreement, and thus, did not misrepresent anything. *See* FAC ¶ 130 (UTPA violations hinge on misrepresentations). To state a claim under the UTPA, Plaintiff must allege "an ascertainable loss of money or property, real or personal, ***as a result of*** another person's willful use or employment of ***a method, act or practice declared unlawful*** under ORS 646.608." ORS 646.638(1) (emphases added). The unlawful "method, act or practice" alleged by Plaintiff is OnPoint's alleged fee-practice representations. FAC ¶ 130.

But OnPoint ***complied*** with the disclosed contract terms, meaning no misrepresentation occurred. Plaintiff does not dispute the validity of the contract, and does not allege contractual terms beyond those found in the Account Agreement and the Fee Schedule. Those documents state that OnPoint will charge a fee each time it returns or pays items presented against insufficient funds, which it did. FAC Ex. A at 2. OnPoint also discloses that if a member uses a non-network ATM and "elect[s] to complete" any of the four permitted transactions, that an "ATM surcharge ***will be debited*** from [the member's] account." FAC Ex. B at 54. There is no misrepresentation, where, as here, OnPoint disclosed its contract terms and complied with those disclosures. Compliance with contract terms is not grounds for a UTPA violation.

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

And in any event, a contract promise alone cannot support a UTPA claim.  In the context of UTPA claims, a "representation of fact" is distinct from a contractual "promise."  *Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or.  85, 91, 566 P.2d 1177 (1977).  The statements in the Account Agreement that OnPoint will charge a fee in some circumstances is not a representation of existing fact, but a contractual promise of how OnPoint will conduct itself in relation to Plaintiff's actions and accounts.  Because there has been no breach of the contract, and no false representation of fact, the Court should dismiss the UTPA claims.

### 5. Plaintiff Cannot Establish Causation.

To state a UTPA claim, Plaintiff must allege facts showing causation.  *Colquitt*, 2016 WL 1276095, at *5.  He must plead "sufficient detail to put [OnPoint] on notice of the causal relationship between a particular alleged unfair business practice and the ascertainable loss and damages incurred as a result of that particular conduct."  *Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1141 (D. Or. 2014).  If UTPA claims hinge on misrepresentations, a plaintiff must allege "reliance-in-fact" on the misrepresentation in suffering loss.  *Harney v. Associated Materials, Inc.*, 2018 U.S. Dist. LEXIS 8124, *15–16 (D. Or. 2018); *Sanders v. Francis*, 277 Or. 593, 598, 561 P.2d 1003 (1977).  Plaintiff does not allege causation because he does not allege he read the Account Agreement or Fee Schedule—the only documents alleged in the FAC. Regardless, Plaintiff cannot plausibly allege OnPoint's statements *caused* him to:  (a) lack sufficient funds; (b) authorize merchants to initiate payments; (c) initiate transactions he otherwise would not have initiated; or (d) check his balance on a non-network ATM.  The disputed fees stem from ***Plaintiff's*** choices and lack of funds, not OnPoint's representations. Because Plaintiff cannot show causation, the UTPA claims fail.

### 6. Plaintiff Does Not Allege Facts Showing Willfulness.

Plaintiff's UTPA claims also fails to allege facts from which a factfinder could conclude OnPoint's allegedly wrongful conduct was willful, knowing, or reckless.  ORS 646.638(1), 646.638(8)(a).  "A willful violation occurs when the person committing the violation knew or

Page 28 – DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

should have known that the conduct of the person was a violation." ORS 646.605(10). And to recover statutory damages on behalf of a class, Plaintiff must allege facts plausibly showing that any loss of money or property stemming from the allegedly wrongful conduct stemmed from the "reckless or knowing" use of an unlawful trade practice by the defendant. ORS 646.638(8)(a). *See, e.g., McKie v. Sears Prot. Co.*, 2011 WL 1587112, *8–9 (D. Or. 2011) (dismissing).

Plaintiff alleges not a single fact supporting this required prong for a private UTPA claim. *See* FAC ¶¶ 132-35 (stating legal conclusions). And with good reason: Plaintiff **concedes** the practice of charging an NSF or an overdraft fee each time an item is presented against insufficient funds is lawful, so long as the practice is properly disclosed. FAC ¶¶ 34–43. And Plaintiff concedes that charging a fully disclosed ATM fee is legal. FAC ¶ 77. This is why contract-based claims do not fit into the UTPA generally—there must be a willful, knowing, or reckless misrepresentation, not merely a disagreement over contract interpretation.

Here, OnPoint *did* properly disclose its practices, but at a minimum, Plaintiff's FAC is bereft of allegations that OnPoint willfully, knowingly, or recklessly harmed him by charging fees he now challenges. OnPoint's alleged conduct cannot violate the UTPA because there is nothing suggesting OnPoint "knew or should have known" of any alleged UTPA violation. *See, e.g. Hamilton v. General Mills, Inc.*, 2016 WL 6542840, *2 (D. Or. 2016). The Court should dismiss Plaintiff's claims on this additional ground.

### 7. The UTPA's Safe Harbor Protects OnPoint.

The UTPA contains a safe harbor for conduct "in compliance with the orders or rules of, or a statute administered by a federal, state or local governmental agency." ORS 646.612(1).

Here, Plaintiff alleges that OnPoint has failed to make appropriate NSF and overdraft fee disclosures. *See* FAC ¶¶ 9-62. But TISA mandates these disclosures, and federal regulators are charged with the exclusive right to enforce TISA disclosures, to the exclusion of state law that would seek to impose additional requirements. *See* 12 C.F.R. §707.4(b)(4) (TISA regulates disclosures over "[t]he amount of any fee that may be imposed in connection with the account

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

(*or an explanation of how the fee will be determined*) *and the conditions under which the fee may be imposed*") (emphasis added); 12 C.F.R. § 707.1(d) ("*State law requirements that are inconsistent with the requirements of the act and this part are preempted* to the extent of the inconsistency."). Because OnPoint's disclosures are presumptively in compliance with a statute administered by a governmental agency, the UTPA's safe harbor applies and bars these claims.

Likewise, Plaintiff alleges OnPoint is liable for not providing ATM fee disclosures at non-network ATMs. FAC ¶¶ 73-80. But as noted above, the EFTA mandates that ATM operators—not the account-holding institution, as OnPoint is here—must make those disclosures. *See, e.g., Azose*, 588 F. Supp.2d at 373 ("Washington Mutual had no obligation under … Regulation E to provide notice to Plaintiffs at the ATM of any fees that it may impose when Plaintiffs utilized the Chase ATM to conduct a balance inquiry of their Washington Mutual accounts."). Because OnPoint's obligations were to provide ATM fee disclosures in the account opening documents, and it did so, the UTPA's safe harbor applies and bars any ATM-fee claims. *Schertzer*, 445 F. Supp. 3d at 1087-88 (dismissing state consumer protection claims based on safe harbor for the same reasons).

## IV.    CONCLUSION

The Court should dismiss Plaintiff's claims with prejudice.

DATED this 23rd day of April, 2021.

DAVIS WRIGHT TREMAINE LLP

By  s/ Tim Cunningham

Frederick B. Burnside, OSB #096617
fredburnside@dwt.com
Tim Cunningham, OSB #100906
timcunningham@dwt.com

Of Attorneys for Defendant OnPoint

4851-2560-5603v.12 0117323-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax