IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIMOTHY SOUTH, individually and on behalf of all others similarly situated,

        Plaintiff,

   v.

ONPOINT COMMUNITY CREDIT, UNION,

        Defendant.

No. 3:21-cv-00567-HZ

OPINION & ORDER

David F. Sugerman
Nadia H. Dahab
Sugerman Law Office
707 SW Washington St., Suite 600
Portland, OR 97205

Lynn A. Toops
Cohen & Malad, LLP
One Indiana Squate, Suite 1400
Indianapolis, IN 46204

    Attorneys for Plaintiff

1 – OPINION & ORDER

Timothy M. Cunningham
Frederick B. Burnside
Davis Wright Tremaine, LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Timothy South brought this class action for breach of contract and violation of the Oregon Unlawful Trade Practices Act against Defendant OnPoint Community Credit Union in state court. Defendant removed the case to this Court, and Plaintiff moves to remand. The Court grants Plaintiff's motion to remand.

## BACKGROUND

Plaintiff filed this class action[1] against Defendant alleging that Defendant breached the parties' contract concerning Plaintiff's personal checking account. Plaintiff's checking account was governed by a Membership Account Agreement subject to OnPoint's "Personal Fee Schedule" (collectively, the Contract). Def. Not. Removal Ex. 1 at 98, 101 (FAC) ¶¶ 14, 78, ECF 1-1; FAC Ex. A, ECF 1-1; FAC ¶ 14; FAC Ex. B, ECF 1-1. Plaintiff alleges that Defendant had a routine practice of charging its personal checking account customers multiple $30 insufficient funds fees (NSF Fees) and overdraft fees on the same item and charging two ATM Withdrawal/Inquiry Fees (OON Fees) per transaction, in violation of the contract and the covenant of good faith and fair dealing. FAC ¶ 2. Plaintiff also alleges that Defendant's multiple-fee practices violated the Oregon Unlawful Trade Practices Act (OUTPA). *Id.*

---

[1] Two other Plaintiffs were named in the Complaint and First Amended Complaint, but they have since voluntarily dismissed their claims against Defendant. Not. Vol. Dismissal 1, ECF 6.

2 – OPINION & ORDER

Plaintiff alleges that although the Membership Account Agreement provides that Defendant will charge a single fee per item regardless of how many times a merchant presents the item for payment, OnPoint routinely violates the agreement by charging an NSF Fee when it returns the item unpaid, and then charging an overdraft fee after paying the same item when the merchant later presents the same item again for payment. *Id.* ¶¶ 11, 18, 21, 23. Plaintiff argues that the agreement does not authorize Defendant to charge multiple NSF Fees per item or charge an NSF Fee and an overdraft fee on the same item. *Id.* ¶ 32. By doing so, Defendant breached its contract with Plaintiff and other similarly situated checking account customers. *Id.* ¶ 30.

By way of example, Plaintiff alleges that on November 30, 2020, Plaintiff attempted to make an ACH payment to a company called FUTU. *Id.* ¶ 50. Defendant rejected payment of the item due to insufficient funds in Plaintiff's account and charged a $30 NSF Fee. *Id.* ¶ 51. Plaintiff agrees that the Member Account Agreement authorized Defendant to charge this initial fee. *Id.* On December 2, 2020, unbeknownst to Plaintiff, OnPoint processed the ACH payment to FUTU, overdrawing Plaintiff's account, and charged Plaintiff a $30 overdraft fee. *Id.* ¶ 52.

Plaintiff also alleges that Defendant charged him multiple OON Fees in violation of the Member Account Agreement and Personal Fee Schedule. Plaintiff alleges that Defendant's Member Account Agreement and Personal Fee Schedule provide that Defendant may charge a single $2 fee for an OON ATM transaction that includes both a balance inquiry and a cash withdrawal. *Id.* ¶¶ 84–86; FAC Ex. A at 2. Plaintiff alleges that Defendant, in violation of its contracts with customers and without any warning to the customer on the OON ATM screen, charges a $2 fee for a balance inquiry and a second $2 fee if the customer proceeds with a cash withdrawal during the same transaction. FAC ¶¶ 87–89, 94.

Plaintiff proposes to represent two classes: (1) "The Multiple Fee Class," comprised of citizens of Oregon who were OnPoint checking account holders and charged multiple NSF and/or overdraft fees on the same item; and (2) "The OON Fee Class," comprised of Oregon citizens who were OnPoint checking account holders charged multiple out-of-network ATM fees by Defendant. *Id.* ¶ 97.

Plaintiff filed suit on behalf of himself and the classes in Multnomah County. Plaintiff's First Amended Complaint alleges three state law claims for relief. In his First Claim for Relief, Plaintiff alleges a breach of contract claim based on Defendant's practice of charging multiple NSF and overdraft fees for a single item. FAC ¶¶ 108–116. In his Second Claim for Relief, Plaintiff alleges a breach of contract claim based on Defendant's practice of charging multiple OON Fees during the same OON ATM transaction. *Id.* ¶¶ 118–128. In his Third Claim for Relief, Plaintiff alleges that Defendant violated OUTPA by failing to notify customers of its Multiple Fee and OON Fee practices and making false or misleading representations concerning its services and fees. *Id.* ¶¶ 130–135. Plaintiff's First Amended Complaint makes one reference to federal law by pointing out that because federal law requires ATM owners to inform users of usage fees, banking customers reasonably expect a warning before the bank or ATM will charge a balance inquiry fee in addition to the cash withdrawal fee. *Id.* ¶¶ 70–74.

Defendant removed the case to this court and asserted three bases for federal subject matter jurisdiction: (1) original jurisdiction under 28 U.S.C. § 1331 because the action arises under federal law; (2) diversity jurisdiction under 28 U.S.C. § 1332; and (3) "related to" jurisdiction under 28 U.S.C. §§ 1334 and 1452 because now-dismissed Plaintiffs Atkins and Campbell had bankruptcy proceedings pending in this district. Def. Not. Remov. 2.

///

**STANDARDS**

Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("Any civil action may be removed to federal district court so long as original jurisdiction would lie in the court to which the case is removed.").

The burden of establishing federal jurisdiction is on the removing party, and the removal statute is strictly construed against removal jurisdiction. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Remand is governed by 28 U.S.C. § 1447(c), which provides, in part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

"The general rule, referred to as the 'well-pleaded complaint rule,' is that a civil action arises under federal law for purposes of § 1331 when a federal question appears on the face of the complaint." *City of Oakland v. BP PLC*, 969 F.3d 895, 903 (9th Cir. 2020) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). The plaintiff is the "master of the claim" and generally may "avoid federal jurisdiction by relying exclusively on state law." *City of Oakland v. BP PLC*, 969 F.3d 895, 904 (9th Cir. 2020). However, under the artful pleading rule, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983).

///

///

## DISCUSSION

Plaintiff moves to remand on the ground that this Court lacks subject matter jurisdiction. Defendant concedes that two of the three bases it asserted for federal jurisdiction in its notice of removal—diversity of citizenship and "related to" jurisdiction based on former plaintiffs' bankruptcy proceedings—no longer exist. Defendant maintains, however, that this court has federal question jurisdiction under 28 U.S.C. § 1331.

### I. The Well-Pleaded Complaint Rule

Plaintiff argues that under the well-pleaded complaint rule, no federal question jurisdiction exists. Under the well-pleaded complaint rule, the Court looks only to the face of the complaint to determine whether Plaintiff's claims arise under federal law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*[2]

Plaintiff's complaint alleges exclusively state law breach of contract and OUTPA claims. Thus, on the face of the complaint, under the well-pleaded complaint rule, this Court lacks federal question jurisdiction.

### II. Exceptions to the Well-Pleaded Complaint Rule

Exceptions to the well-pleaded complaint rule exist, and one exception is relevant here. Under that exception, a defendant can establish federal question jurisdiction if the defendant demonstrates that (1) the plaintiff's claims "necessarily raise" federal questions because the plaintiff's right to relief depends on the construction, interpretation, or application of federal law;

---

[2] *See also Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced"); *Great N. R.R. Co. v. Alexander*, 246 U.S. 276, 282 (1918) ("[T]he plaintiff may by the allegations of his complaint determine the status with respect to removability of a case").

6 – OPINION & ORDER

(2) the federal issues are "actually disputed;" (3) the federal issues are substantial; and (4) the federal issues are capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). The Supreme Court has characterized this exception as one that applies only to a "special and small category" of cases. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006) (holding that federal question jurisdiction did not exist over "an insurer's contract-derived [subrogation] claim"). All four factors must be met for the court to have federal question jurisdiction over state law claims. *Id.*

Because Defendant has not met its burden to demonstrate that all four *Gunn* factors have been met, the Court finds that this exception to the well-pleaded complaint rule does not apply, and the Court lacks subject matter jurisdiction over Plaintiff's claims.

  A.  Whether Plaintiff's Complaint Necessarily Raises Federal Questions

Defendant argues that Plaintiff's First Amended Complaint necessarily raises federal questions because (1) it explicitly refers to federal law in paragraphs 13, 70, and 80; (2) the Member Account Agreement incorporates federal law; and (3) Plaintiff's claims require the construction and application of the Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693, and the Truth in Savings Act (TISA), 12 U.S.C. § 4301. Def. Resp. Mot. Remand (Def. Opp'n) 12, ECF 11.

    i.  Explicit reference to federal law

The Court agrees with Plaintiff that the federal law referenced in the First Amended Complaint provided contextual background, not the basis for any of Plaintiff's contract and OUTPA claims. At paragraph 13, the First Amended Complaint alleges that "[t]he Federal

Deposit Insurance Corporation . . . has expressed concern with the practice of assessing multiple fees on an item. In 2012, the FDIC determined that one bank's assessment of more than one NSF Fee on the same item was a 'deceptive and unfair act.'" FAC ¶ 13 (citation omitted). Paragraph 70 of Plaintiff's First Amended Complaint cites a provision of the EFTA, 15 U.S.C. § 1693b(d)(3)[3], as context for Plaintiff's allegation that ATM users have come to reasonably expect a notification that the ATM will charge a fee for a particular use of the ATM before the user incurs a fee. At paragraph 80, the First Amended Complaint alleges that "[a]gainst the backdrop of the reasonable consumer expectations and federal law above, Defendant's contractual disclosures deceive consumers[.]" FAC ¶ 80. Because they provide context for Plaintiff's state law claims, Plaintiff's references to federal law in the compliant do not necessarily raise federal questions.

        ii.       Incorporation of federal law into the Contract

The portion of the Member Account Agreement that Defendant argues incorporates federal law does not transform Plaintiff's First Amended Complaint into one that necessarily raises federal questions. In support of its argument, Defendant cites the Member Account Agreement's requirement that "If you do not tell us [about EFT transfers that you did not make, including transfers by Card, Access Code, or other means] within sixty (60) days after the statement was mailed or became available to you, you may be liable for . . . the full amount of the loss." Def. Opp'n 7 (citing FAC Ex. B at 53–54). Defendant argues that because the EFTA authorizes Defendant to impose that requirement on its customers, Plaintiff's First Amended Complaint necessarily raises federal questions. *Id.* The provision of the Member Account

---

[3] 15 U.S.C. § 1693b(d)(3) provides, in general, that ATM operators must notify customers of any fee that the ATM operator will charge for completing a transaction before the customer is irrevocably committed to completing the transaction.

8 – OPINION & ORDER

Agreement quoted by Defendant refers to the "unauthorized use of your account" and explains consequences that apply when a member fails to timely report fraudulent transactions if Defendant "can prove that we could have stopped someone from accessing your account without your permission if you had told us [sooner]." FAC Ex. B at 54. Nothing in the language of that provision of the Member Account Agreement expressly incorporates federal law. Even if it did, the existence of a federal statute authorizing certain relevant conduct does not affect the Court's analysis of the parties' rights and obligations under the terms of the contract.

          iii.    Construction and application of EFTA and TISA

Defendant argues that Plaintiff's contract claims necessarily raise federal questions because they require the Court to construe and apply the EFTA and TISA. Specifically, Defendant argues that Plaintiff's claims are premised on unauthorized electronic funds transfers governed by the EFTA and on disclosures mandated by the TISA. Def. Opp'n 14. Defendant mischaracterizes Plaintiff's allegations. Although Defendant may have incorporated in its Contract with customers some of the rights and obligations of the parties under the EFTA and TISA, Plaintiff's claims are not premised on allegations that Defendant violated federal statutes, they are premised on Defendant's violation of the terms of the contract and the covenant of good faith and fair dealing. Thus, contrary to Defendant's argument, the allegations of the First Amended Complaint require the Court only to construe the terms of Member Account Agreement—not EFTA or TILA—to resolve Plaintiff's contract claims, and contract interpretation is a question of state law. *See Caterpillar*, 482 U.S. at 395–97 (the application of federal labor law to the plaintiff's state employment contract claim did not establish that the claim was removable even if the defendant could ultimately establish that the plaintiff's claims are pre-empted by federal law); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior*

*Univ.*, 489 U.S. 468, 474 (1989) ("The interpretation of private contracts is ordinarily a question of state law[.]").

Although Defendant may raise defenses to Plaintiff's contract claims based on federal law, the existence of those defenses is insufficient to establish federal question subject matter jurisdiction. *Franchise Tax Bd.*, 463 U.S. at 22 ("[A] case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."). *See also Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) ("Federal jurisdiction cannot be predicated on an actual or anticipated defense.").

Defendant argues that Plaintiff's OUTPA claim necessarily raises federal questions because OUTPA does not apply to "[c]onduct in compliance with the orders or rules of, or a statute administered by a federal, state or local governmental agency." Def. Opp'n 8–9 (citing Or. Rev. Stat. § (O.R.S.) 646.612(1)). Defendant argues that the Court must first decide whether Defendant's conduct complied with TISA "before Plaintiff can state a[n] OUTPA claim." *Id.* at 9. Defendant is incorrect.

First, whether Plaintiff's claim is exempted from OUTPA is a defense to Plaintiff's OUTPA claim, not an element of Plaintiff's OUTPA claim. *See Rathgeber v. James Hemenway, Inc.*, 176 Or. App. 135, 140 (2001), *aff'd*, 335 Or. 404, 410–11 (2003) (listing essential elements of an OUTPA claim); *Vaden*, 556 U.S. at 60 (federal jurisdiction cannot be predicated on a defense). Second, O.R.S. 646.612(1) exempts "only *conduct* that is *mandated* by other laws." *Page v. Roundpoint Mortg. Serv. Corp.*, No. 6:16-cv-00888-AA, 2019 WL 591448, at *2 (D. Or. Feb. 12, 2019) (citing *Hinds v. Paul's Auto Werkstatt, Inc.*, 107 Or. App. 63, 67 (1991)) (emphasis in original). Defendant does not argue or cite any authority to establish that TISA

required it to charge Plaintiff multiple OON Fees, overdraft fees, or NSF Fees. As a result, Defendant has not demonstrated that O.R.S. 646.612(1) bars Plaintiff's claims. *See Rathgeber*, 335 Or. at 410 (holding that real estate agent could not rely on O.R.S. 646.612(1) to avoid OUTPA liability because "[n]o statute required [real estate agent] to breach his fiduciary duty to plaintiffs or to act in any manner that was inconsistent with that duty.").

Defendant argues that *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing* is directly on point and establishes that Plaintiff's claims necessarily raise federal questions. Def. Opp'n 9–10. The Court disagrees. In *Grable & Sons*, the plaintiff brought a state law quiet title action challenging an IRS tax sale of its property. 545 U.S. at 308–20. In doing so, Grable & Sons argued that it received insufficient notice of the sale under a provision of the federal tax code. *Id.* at 311. The Supreme Court held that because the meaning of the notice requirement in the federal tax code was the only factual or legal issue contested in the case, the meaning of the statute was actually disputed, and the Court's interpretation of the statute would have far-reaching implications, Grable & Sons had necessarily raised a question of federal law. *Id.* at 315 (ultimately holding that federal jurisdiction existed because each of the four factors had been met).

Here, Plaintiff alleges in part that Defendant failed to "disclose" that it considered reprocessing the same item for payment multiple times as separate items each subject to NSF or overdraft fees, FAC ¶ 32, and failed to "disclose" that a balance inquiry alone would incur a usage fee at an OON ATM, FAC ¶ 75, 77. Those allegations explain Plaintiff's surprise when Defendant charged multiple fees for the same item or transaction and buttress Plaintiff's claim that Defendant breached of the duty of good faith and fair dealing. Unlike the plaintiff in *Grable & Sons*, Plaintiff has not raised a single issue of federal statutory interpretation that is dispositive

of the case. Because Plaintiff has raised no federal issues on the face of the complaint or by necessary implication, Defendant has failed to establish that Plaintiff's complaint necessarily raises federal questions. *See Caterpillar*, 482 U.S. at 398–99 (because "the plaintiff is the master of the complaint," the plaintiff "may, by eschewing claims based on federal law, choose to have the cause heard in state court."); *Merrell Dow*, 478 U.S. at 813 (holding that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction"); *Empire Healthchoice*, 547 U.S. at 701 (characterizing *Grable & Sons* as emphasizing that "it takes more than a federal element to open the arising under door" and holding that "an insurer's contract-derived claim to be reimbursed from the proceeds of a federal worker's state-court-initiated tort litigation" could not be "squeezed into the slim category *Grable* exemplifies").

However, even if, as Defendant argues, Plaintiff's First Amended Complaint raises issues of federal law concerning whether Defendant had disclosure obligations under EFTA and TISA, this case should nonetheless be remanded to state court because Defendant has not met its burden to show that each of the four factors establish that this Court has jurisdiction over Plaintiff's state law claims.

      B.      Whether the Federal Issues Are Actually Disputed

Assuming that Plaintiff's First Amended Complaint raises questions of federal law, the parties' conflicting briefing on this motion about whether the EFTA and TISA apply to Plaintiff's claims and what obligations those statutes impose on the parties demonstrates that those issues are actually disputed. However, as discussed below, any issues of federal law that may exist are insubstantial, and the division of labor between state and federal courts intended by Congress would be disturbed by this Court invoking jurisdiction.

C.      Whether the Federal Issues Are Substantial

The federal issues raised in Plaintiff's First Amended Complaint, if any exist, are not substantial. The Ninth Circuit has explained the substantiality requirement as follows:

> An issue has such importance when it raises substantial questions as to the interpretation or validity of a federal statute, *see Smith*, 255 U.S. at 201, 41 S. Ct. 243; *Hopkins*, 244 U.S. at 489–90, 37 S. Ct. 711, or when it challenges the functioning of a federal agency or program, *see Grable*, 545 U.S. at 315, 125 S. Ct. 2363 (holding there was federal jurisdiction to address an action challenging the IRS's ability to satisfy tax delinquencies by seizing and disposing of property); *cf. Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 911 (7th Cir. 2007) (holding that federal jurisdiction was lacking because, among other reasons, the plaintiffs did not "challenge the validity of any federal agency's or employee's action"). Moreover, an issue may qualify as substantial when it is a "pure issue of law," *Empire Healthchoice*, 547 U.S. at 700, 126 S. Ct. 2121 (citation omitted), that directly draws into question "the constitutional validity of an act of Congress," *Smith*, 255 U.S. at 201, 41 S. Ct. 243, or challenges the actions of a federal agency, *see Grable*, 545 U.S. at 310, 125 S. Ct. 2363, and a ruling on the issue is "both dispositive of the case and would be controlling in numerous other cases," *Empire Healthchoice*, 547 U.S. at 700, 126 S. Ct. 2121 (citing *Grable*, 545 U.S. at 313, 125 S. Ct. 2363). By contrast, a federal issue is not substantial if it is "fact-bound and situation-specific," *see id.* at 701, 126 S. Ct. 2121, or raises only a hypothetical question unlikely to affect interpretations of federal law in the future, *see Gunn*, 568 U.S. at 261, 133 S. Ct. 1059. A federal issue is not substantial merely because of its novelty, *see id.* at 262, 133 S. Ct. 1059, or because it will further a uniform interpretation of a federal statute, *see Merrell Dow Pharm.*, 478 U.S. at 815–16, 106 S. Ct. 3229.

*City of Oakland*, 969 F.3d at 905.

The substantiality requirement "focuses on the importance of a federal issue 'to the federal system as a whole.'" *Id.* (quoting *Gunn*, 568 U.S. at 260). In *Grable & Sons*, the court emphasized that "[t]he Government has a strong interest in the 'prompt and certain collection of delinquent taxes'" and that the Government "has a direct interest in the availability of a federal forum to vindicate its own administrative action, and buyers (as well as tax delinquents) may find it valuable to come before judges used to federal tax matters." 545 U.S. at 315. The federal issues in this case do not approach the level of substantiality of the federal issues in *Grable & Sons*. Here, Plaintiff's First Amended Complaint raises no question concerning the government's

13 – OPINION & ORDER

administrative actions, the constitutionality of a federal statute, or challenges to the government's authority to regulate financial institutions. The federal issues present in this case are not dispositive and would not be controlling in other cases. They are also fact-bound. At most, this case could require a court to apply federal law which, alone, does not establish that the federal issues are substantial. *See Merrell Dow*, 478 U.S. 804 (explaining that the absence of a federal cause of action for violating a federal statute "is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction"); *Gunn*, 568 U.S. at 260 (characterizing the decision in *Grable & Sons* as turning on the substantiality requirement and noting that "[t]he Government's 'direct interest in the availability of a federal forum to vindicate its own administrative action' made the question 'an important issue of federal law that sensibly belong[ed] in federal court.'") (quoting *Grable*, 545 U.S. at 315); *Empire Healthchoice*, 547 U.S. at 701 (holding that it takes more than a federal element to establish arising under jurisdiction).

Defendant's remaining arguments mischaracterize the allegations in the First Amended Complaint. Defendant argues that the federal issues are substantial because "[i]f [plaintiff] can use state law to require financial institutions to make specific disclosures—and TISA preempts any such attempt—then every state and federal financial institution operating in Oregon will be required to change its disclosures to avoid liability." Def. Opp'n 11 (emphasis omitted). However, Plaintiff's First Amended Complaint seeks no equitable relief in the form of compelling financial institutions to make specific disclosures. Similarly, Defendant argues that "if the Court agrees with Plaintiff that Oregon consumers need not comply with their EFTA obligation" or holds Defendant "liable because it failed to ensure that EFTA balance-inquiry disclosures appeared on the screen of a non-network ATM, all financial institutions operating in

Oregon will have new obligations." But Plaintiff's allegations do not require the Court to make any such findings. Instead, the First Amended Complaint requires the Court to decide, under state law, whether Defendant breached its contract or the duty of good faith and fair dealing when Defendant charged Plaintiff and other class members certain fees. Defendant has failed to meet its burden to demonstrate that substantial questions of federal law require this case to be heard in a federal forum.

      D.      Federal-State Balance

The final factor requires the court to make "sensitive judgments about congressional intent, judicial power, and the federal system" when determining whether federal jurisdiction exists under the limited jurisdiction conferred on the federal courts by Congress in § 1331. *Grable*, 545 U.S. at 318. No important federal interest exists to suggest that this breach of contract claim should be heard in a federal forum. On the other hand, states have an interest in construing contracts, enforcing contracts, and determining the rights and obligations of parties to contracts. Even if questions concerning the meaning of EFTA and TISA arise, the impact of the state court's interpretation of those federal statutes will have no broader implications than those that will affect the parties in this case. As a result, this factor favors remand to state court. *See Gunn*, 568 U.S. at 262–65 (holding that although attorney malpractice case would require interpretation and application of patent law, the state court's interest in regulating lawyers established that remand was appropriate where "no serious federal interest in claiming the advantages of a federal forum" existed) (quotation marks omitted).

///

///

///

Because Defendant has not met its burden to show that Plaintiff's First Amended Complaint pleads claims that fit within the narrow exception to the well-pleaded complaint rule, this case must be remanded to state court.

## CONCLUSION

The Court GRANTS Plaintiff's Motion to Remand to State Court [8]. This case is REMANDED to the Multnomah County Circuit Court. Defendant's Motion to Dismiss for Failure to State a Claim [7] is denied as moot.

IT IS SO ORDERED.

DATED: _____June 14, 2021_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge